UNITED STATES of America
v.
William Lee THOMPSON, Appellant.
No. 18355.

United States Court of Appeals,
Third Circuit.

Argued May 5, 1970.

Decided Sept. 18, 1970.

Darlington Hoopes, Hoopes & Hoopes, Reading, Pa., Peter L. Gale, Philadelphia, Pa., for appellant.

Charles B. Burr, II, Asst. U. S. Atty., Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., for appellee.

Before HASTIE, Chief Judge, and MARIS and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

After a trial to the district court, the appellant, William Lee Thompson, was convicted for refusing to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 454 and § 462. He makes three arguments for reversal on this appeal: (1) that his I–A classification had no basis in fact; (2) that the manner in which the local Selective Service board dealt with his request for reopening lacked requisite procedural fairness; and (3) that the local board refused without justification to reopen his I–A classification and consider his claim to a III–A hardship deferment after he had been ordered to report for induction. We find it unnecessary to consider the registrant's third contention.

In January 1966, Thompson enjoyed deferment in Class III–A on the basis of a Current Information Questionnaire from the previous year which indicated that he was living with his wife and two children.[1] However, on January 17, 1966 he was reclassified I–A as a result of information volunteered by his wife that he was living apart from her and was delinquent in the payment of money for her support and the support of their two small children.

During the next three months, Thompson proceeded down the proce-dural path toward induction. He appealed his I–A classification, and the action of the local board was affirmed unanimously. He was ordered to report for an Armed Forces Physical Examination, was found to be qualified for military service, and was issued a Statement of Acceptability. However, over the same period of time, both Thompson and his wife wrote letters to the local board to the effect that they were separated for economic reasons, that they would be reunited as soon as they could locate a house, and that they were expecting a third child.[2]

On the last day of March, the local board received the following letter from Mrs. Thompson:

"I'm writing this letter to inform you that my husband and I have not yet moved into a house. We have been able to locate one * * * that we may rent, as soon as my father-in-law, who is part owner of the house, returns from New York in two weeks. * * *

"I don't know if this has any bearing on the matter, but we are also expecting another child in August. *It will be quite impossible for me to manage without my husband.*" (emphasis added).

With it thus appearing that the couple were not sharing a family home, the local board reclassified Thompson III–A on April 19, 1966, apparently on the ground of extreme hardship to depend-

---

1. 32 C.F.R. § 1622.30(a) (1966) provides:
"In Class III–A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home * * *"

2. In his letter of appeal, received by the local board on January 28, 1966, Thompson wrote:
"True, gentlemen, I am separated from my wife, however, it is for economic reason not emotional marital problems. * * *

"Consequently, I feel it unjust to make reclassification to a married man with two children, loaded with domestic monetary problems, * * * and certainly unable to adjust to a national military problem when he has an augmented amount of his own."
On February 15, 1966, the local board received a letter from Mrs. Thompson stating:
"At this point we are still separated, but are looking for a house. As soon as we are able we will be reconciliated."

ents,[3] since no other basis for such reclassification appears in the record.

On May 27, 1966, the local board received a letter from Mrs. Thompson containing statements that once again led to her husband's loss of his III–A classification:

"I fully realize that this is not something to be played around with and that I can not keep changing my mind about it. Therefore, I feel that you should have an explanation as to why I have changed my mind and just what my situation is.

"When I found out I was pregnant again, I thought that I had no other choice, but to go back with my husband, because although I am living with relatives, I must move, and I have no means of an income other than the support money I receive. That is when I wrote to you stating that we would be reconciliated.

"I have since found out that I am eligible to rent a house in the Projects, and I am pursuing this course of action.

"As, it is not necessary for me to go back with my husband, because of the circumstances I have just mentioned, I am not.

"Although he is working now, I have found out he is still gambling his money away and not paying any bills. So, I really can not afford to go back with him for the sake of my children, and unborn child. *The best thing for all concerned would be for him to be drafted as soon as possible.*" (emphasis added).

On June 27, 1966, after confirming that the spouses were still living apart, the board gave Thompson a I–A classification which he did not appeal, and on

July 27, 1966, he was mailed an order to report for induction.

It is noteworthy that the only fact before the local board when it reclassified Thompson I–A on June 27, 1966 that was not considered in granting his III–A classification on April 19, 1966 was his wife's representation that she would be able to find housing on her own, that she would not return to her husband and that he was "not paying any bills." The registrant's file had not indicated that the family was actually living together at the time the hardship finding and reclassification had occurred. And despite the opinion stated in Mrs. Thompson's last letter, that her husband's induction was desirable, she still maintained that her husband was the only source of support for her and presumably for her children.

On August 1, 1966, less than a week after the induction notice, the local board received two letters from Thompson. One informed the board of the birth of Thompson's third child on July 25, 1966.[4] The other purported to "appeal" Thompson's notice of induction, and contained a request for a personal appearance, saying, "I ask for a deferment on the premise of 'Hardship' and I request an opportunity to present my case in person to my local board." This second letter also set forth a rather detailed statement of the financial needs of Thompson's family, including the amounts required for medical expenses and support. On the same day that these letters were received, the clerk of the local board forwarded Thompson's cover sheet and file to the State Director, with a letter stating, "The Board Members were contacted this date and they suggested forwarding the file to you for your opinion

3. 32 C.F.R. § 1622.30(b) (1966) provides:

"In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship (1) to his wife * * * who is dependent upon him for support, or (2) to a person under 18 years of age * * * whose support the registrant has assumed in good faith. * * * *"

As noted earlier, a III–A dependency deferment under § 1622.30(a), different from III–A hardship deferment under § 1622.30(b), requires that the registrant maintain a family relationship with a child or children in their home.

4. This event was reported within ten days of its occurrence, as required by 32 C.F.R. § 1625.1(b) (1966).

since they do not desire to reopen the classification."

After reviewing Thompson's file, a representative of the State Director (Major Evans) returned it to the local board with the following recommendations:

"If the registrant is in fact the sole support of the wife and three children, his eligibility for classification into Class III–A should be considered by the board.

"Current Information Questionnaire * * * ·indicates that the registrant resides with his wife and children. If this is so, then the board should not proceed with the registrant's induction.

"Due to the conflicting evidence contained in the file, *it is recommended that the board interview both the registrant and his wife at the same time in order that the family relationship can definitely be established.*

"Should the registrant be eligible for Class III–A according to the provisions of 1622.30 of the regulations, the board should request authority to reopen and classify anew." (emphasis added).

Upon receipt of this letter, the clerk of the local board telephoned only Mrs. Thompson, despite the recommendation that Thompson and his wife be interviewed jointly. Mrs. Thompson's comments over the phone, reproduced in a memorandum prepared by the clerk and an assistant, repeated and amplified the adverse statements she had made in the letter that had brought about her husband's most recent reclassification. She complained that she never knew from one day until the next whether she would get her support money, and that most of the time she had to go to the courthouse for it. She represented that her husband's induction would be better for both of them, because at least she would have a steady income. She said that her husband lived with his grandmother without paying rent, borrowed money from her, and gambled it

away. Finally, Mrs. Thompson said that she would come to the local board for an interview if necessary, but that it would be difficult for her, she would only repeat the same statements, and "[s]he didn't want to come in on his behalf if this would delay his induction. * * *"

Without notifying Thompson of Major Evans' recommendations or of Mrs. Thompson's adverse statements, without giving Thompson any opportunity to respond to either, and without consulting the members of the local board, the clerk telephoned the State Director's office, "read all information received from Mrs. Thompson and asked if we should still have them in for an interview." Major Evans requested that the file be sent to him again. When he returned it to the local board on August 5, the accompanying letter stated, "Your telephone memorandum * * *, giving details of conversation with registrant's wife, makes it apparent that the board should proceed with the registrant's induction as scheduled."

Ten days later, on August 15, 1966, the clerk of the local board notified Thompson in the following terms that his request for reconsideration had been denied:

"With reference to your letter of July 29, 1966 appealing your induction into the U. S. Army, your entire cover sheet was forwarded to our State Headquarters for their consideration. * * *

"Your cover sheet and file was returned from State Headquarters advising us to proceed with your induction. * * *"

However, not until August 18 did the local board meet formally for the first time since Thompson's request for reconsideration. The minute entry states, "Board reviewed file—Order for Ind. still in effect—Class. not reopened." In this connection we observe that the registrant's file shows that on August 16 the clerk of the board had "telephoned the courthouse" and had been

advised that the registrant "must pay $45.00. He now owes $49.00. He usually pays $90.00 every two weeks." Nevertheless, Thompson was notified that "the Board Members reviewed your complete file and cover sheet and it was decided your Induction Order is still in effect." Five days later, Thompson failed to report for induction.

On this appeal, Thompson first contends that the local board had no "basis in fact" for classifying him I-A on June 27, 1966.[5] However, his failure to appeal his classification within the prescribed 10-day period[6] precludes us from reviewing this action of the local board. His claim for a III-A classification on the basis of extreme hardship to dependents involved precisely the type of factual determination and exercise of discretion by the local board that should be subjected to full administrative review within the Selective Service System before a registrant may challenge the merits of the local board's action as a defense to a criminal prosecution for failure to report for induction. *Cf.* McKart v. United States, 1969, 395 U.S. 185, 198 n. 16, 89 S.Ct. 1657, 23 L.Ed.2d 194; United States v. Zmuda, 3d Cir. 1970, 423 F.2d 757, 760-761 (alternative holding).

On the other hand, Thompson's failure to invoke administrative review of his June 27 reclassification does not prevent us from considering his claim

that the manner in which the local board dealt with his August 1 request for reopening denied him procedural due process. Administrative review of a registrant's classification could not have cured procedural errors that had not yet been committed. Moreover, no administrative remedies are prescribed for the review of a refusal to reopen.[7] Thus, the case is ripe for judicial review of claimed procedural unfairness in the local board's treatment of Thompson's "appeal" of his induction.

Initially, we hold that the letters received from Thompson by the local board on August 1, 1966, though styled as an "appeal," constituted a written request to reopen and consider anew Thompson's classification, within the meaning of 32 C.F.R. § 1625.2 (1966). In the letters, Thompson alleged arguably new facts and changed circumstances in an apparent attempt to comply with the requirements of that section.[8] The clerk's letter to the State Director, stating that "[t]he Board Members do not desire to reopen the classification," indicates that the clerk and the local board considered Thompson's letters as a written request for reopening. Although the clerk never used the word "reopen" in her communications to Thompson, the letters of August 15 and August 18 seem to be intended as a compliance with the required notification of refusal to reopen,[9] and thus demonstrate that the lo-

---

5. *See* Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; United States v. Carroll, 3d Cir. 1968, 398 F.2d 651, 653.

6. 32 C.F.R. § 1626.2 (1966).

7. *See* United States v. Burlich, S.D.N.Y. 1966, 257 F.Supp. 906, 913 n. 30.

8. 32 C.F.R. § 1625.2 (1966) provides:
   "The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the reg-

istrant's classifications; * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

9. 32 C.F.R. § 1625.4 (1966) requires that if a requested reopening is refused, "the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening * * * and shall place a copy of the letter in the registrant's file."

cal board comprehended the purpose of Thompson's communications. Moreover, whether or not the local board treated the August 1 letters as a request for reopening, it should have done so in view of the principle that "when a registrant indicates, no matter how unclearly, a desire for a procedural right, it is the duty of the board to construe it in favor of the registrant and if need be to obtain clarification from him." [10]

■ In support of his contention that the local board denied him due process in dealing with his request for reopening, Thompson specifies the board's failure either to interview him in accordance with the recommendation of Major Evans or, regardless of any such recommendation, to provide the registrant, who had asked in writing for a personal appearance, with an opportunity to rebut his wife's adverse statements, and the board's subsequent action upon his request for reopening without more than the one-sided record of information and conclusions opposed to his request that the clerk had compiled. We agree that once the clerk undertook to make factual inquiries about Thompson's economic condition and family situation, it was a denial of procedural fairness not to consult him and give him an opportunity to counter his wife's statements.

Gonzales v. United States, 1955, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, is the seminal case dealing with a registrant's right, as a matter of essential fairness, to know of adverse evidence considered by selective service authorities and to have an opportunity to rebut it. In that case the Supreme Court reviewed the conviction of a conscientious objector for refusal to submit to induction. Under a statutory procedure that has since been abolished, the Department of Justice had recommended denial of the requested conscientious objector classification to the Appeal Board. The conviction was reversed because the Supreme Court found it "implicit in the Act and Regulations— viewed against our underlying concepts of procedural regularity and basic fair play—that a copy of the recommendation of the Department be furnished the registrant at the time it is forwarded to the Appeal Board, and that he be afforded an opportunity to reply." 348 U.S. at 412, 75 S.Ct. at 412 (footnote omitted).

Applying the principles of the *Gonzales* decision, the lower federal courts have held that when the State Director appeals a classification,[11] the registrant is entitled to be informed of and given an opportunity to rebut adverse statements and arguments made by the State Director.[12] In United States v. Owen, 8th Cir. 1969, 415 F.2d 383, the same right to know and reply to adverse information was held to apply to comments about a registrant's religious beliefs solicited by a local board from a minister unconnected with the Selective Service System. Although "the information complained of [was] less than inflammatory, it [was] clearly adverse and prejudicial," [13] and the court held that the registrant "was denied a basic procedural right when he was classified by the local board and the appeal board without first being apprised of adverse information in his file and being given an opportunity to rebut it." [14] At least one case has upheld a registrant's right to knowledge and rebuttal of adverse information that was considered by the local board only

10. United States v. Turner, 3d Cir. 1970, 421 F.2d 1251, 1255 (footnote omitted). *See* United States ex rel. Berman v. Craig, 3d Cir. 1953, 207 F.2d 888, 891.

11. Such an appeal is provided by 32 C.F.R. § 1626.1.

12. United States v. Cummins, 8th Cir. 1970, 425 F.2d 646; Wiener v. Local Board No. 4, D.Del.1969, 302 F.Supp. 266; Nevarez Bengoechea v. Micheli, D.P.R.1969, 295 F.Supp. 257.

13. 415 F.2d at 388.

14. 415 F.2d at 389.

in connection with a request for reopening.[15] We think that the rationale of these precedents extends to the present case, and that the local board, and its clerk acting for it, violated the requirements of procedural fairness in dealing with Thompson's request for reopening, by seeking clarification of Thompson's situation only from his estranged wife, who was known to have volunteered extremely damaging information about her husband on at least two occasions, by not informing Thompson of the adverse information thus obtained, and by failing ultimately to give Thompson any opportunity to reply to his wife's adverse statements despite his written request for a hearing.

■■ The current rule in this circuit requires proof of prejudice to substantiate a claim that "denial of basic procedural fairness" in the selective service process invalidates a subsequent conviction for refusal to submit to induction.[16] We are satisfied that the requisite showing has been made. First, the above discussed relationship between Thompson's reclassification of I–A on June 27 and his wife's recommendations of May 27 indicates that throughout this case her statements and

expressed wishes have carried great weight with the local board.[17] Second, although the initial letter from Major Evans indicated that he was favorably disposed to grant the local board authority to reopen Thompson's classification, after the clerk contacted Mrs. Thompson and relayed her comments to Major Evans he advised the local board to proceed with Thompson's induction. If the clerk had inquired of Thompson what he was in fact contributing in support of his family before Mrs. Thompson's version of the situation induced Major Evans to change his mind, and if Thompson had submitted nothing more than the information that he later voluntarily sent to the local board,[18] Major Evans might well have been persuaded to recommend or even request a reopening. Instead, when the local board formally considered Thompson's request for reopening, it was presented not only with the adverse and uncontradicted statements of Thompson's wife, but also with a recommendation from the State Director's representative, based upon those adverse statements, that Thompson be inducted. These results of the one-sided fact-finding procedures con-

15. Murray v. Blatchford, D.R.I.1969, 307 F.Supp. 1038, 1054–55. In *Murray*, the adverse information took the form of a memorandum prepared by a representative of the State Director.

16. United States v. Bellmer, 3d Cir. 1968, 404 F.2d 132, 135 n. 6. *Bellmer* involved an alleged violation by the State Appeal Board of a regulation requiring a certain letter from the registrant to be considered and placed in his file. This court derived the rule stated in the text from two cases that somewhat similarly concerned local board violations of Selective Service Regulations, namely, United States v. Spiro, 3d Cir. 1967, 384 F.2d 159, 161, cert. denied, 390 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151, and United States v. Sturgis, 3d Cir. 1965, 342 F.2d 328, 331, cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120. For present purposes we can assume without deciding that proof of prejudice is also necessary to sustain the contention that knowledge of ad-

verse statements and an opportunity to rebut them were wrongfully denied by the local board. It should be noted that the registrant's basic rights to know of the information in his file and to present information to the board are contained in regulations. *See* C.F.R. § 1606.32, § 1621.12, and § 1625.2 (1966); United States v. Cummins, *supra*, 425 F.2d 648–649.

17. See the text at notes 2–4, *supra*.

18. After *Thompson's* request for reopening was denied, he submitted evidence that he had voluntarily raised the amount of support paid to his wife and children and that he was being billed for his wife's medical expenses. In addition, as noted earlier, the clerk checked with the support office, apparently at Thompson's request, and learned that Thompson "usually" paid the required amount of support. Mrs. Thompson had represented that she never knew whether she would receive her support money.

stitute sufficient prejudice to satisfy the requirements of our rule.

We shall reverse the judgment of the court below and direct entry of a judgment of acquittal, without prejudice to any further action within the Selective Service System that may be appropriate in this registrant's case.