**UNITED STATES of America**

v.

**Richard Jackson POWELL, Jr., Appellant.**

**No. 19275.**

United States Court of Appeals, Third Circuit.

Argued Jan. 5, 1971.

Reargued Sept. 10, 1971.

Decided Oct. 12, 1971.

James J. Orlow, Orlow & Orlow, Philadelphia, Pa., for appellant.

Charles B. Burr, II, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GANEY and ADAMS, Circuit Judges, and WEIS, District Judge.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This case involves an appeal from a conviction by a registrant for refusing to submit to induction into the Armed Forces of the United States in violation of § 12(a) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 462(a), by refusing to "step forward" when so directed. The registrant makes the following contentions: (1) The Medical Examining Section of the Armed Forces Entrance and Examination Station failed to give him a psychiatric examination as required by the Army Regulations; (2) The local board failed to consider "medical evidence" of his alleged psychiatric disability in accordance with the Selective Service Regulations, and (3) The local board's finding that his post-induction order claim for reclassification as a conscientious objector was not a change in his status over which he had no control is without any basis in fact.

On March 23, 1967, the registrant, then 18 years of age, filed a Classification Questionnaire (SSS Form 100) in which he did not claim any deferment status. On May 19, 1967, he was classified I–A by a vote of 5 to 0 of the local board. He was notified of the board's action three days later. The notice advised him of his right to a personal appearance before the board and his right to appeal from his classification. Although he knew he had those rights, he did not request a personal appearance and he did not appeal.

A few days short of a year later, on May 20, 1968, he reported to the Armed Forces Entrance and Examination Station ("AFEES") where he was physical-

ly examined by several doctors. A month later he was advised by his local board that he was found fully physically acceptable for induction into the Armed Forces. On December 27, 1968, he was ordered by the board to report for induction on January 17, 1969. The order to report contained the following statement printed in large type:

IMPORTANT NOTICE

(Read Each Paragraph Carefully)

* * * IF YOU HAVE ANY PHYSICAL OR MENTAL CONDITION WHICH, IN YOUR OPINION, MAY DISQUALIFY YOU FOR SERVICE IN THE ARMED FORCES, BRING A PHYSICIAN'S CERTIFICATE DESCRIBING THAT CONDITION, IF NOT ALREADY FURNISHED TO YOUR LOCAL BOARD.

Though he had read the instruction attached to the notice to report, he did not bring any doctor's certificate with him when he reported for induction on January 17, 1969, to indicate any possible disqualifying mental or physical condition. He was given a general physical inspection at the induction station, found fit for military service and then ordered to submit to induction. The reason for his refusal, written on stationery of the induction station, was "because I cannot face the possibilities of being put in a position where I might have to sacrifice the life of another human being to save my own. * * *"

I.

■ The registrant first claims he was not properly indicted and convicted because he was denied due process of law by the Selective Service System in the processing of his classification and order to be inducted since he was not given the complete physical examination regarding his alleged psychoneuroses as required by the Army Regulations prior to his being ordered to step forward.[1] When he was receiving his physical at the AFEES on May 20, 1968, one of the examining physicians recommended that the registrant see a psychiatric consultant. The omission of the AFEES to accept this recommendation and order him to see such a consultant is the basis of his claim of an incomplete physical examination. Turning to the registrant's Selective Service File (Government's Exhibit G-1), we note that a number "1" is written under the code letter "S" in item 76A, designated as "Physical Profile" in Standard Form 88 (Report of Medical Examination). The significance of this notation is that in the opinion of the medical examiner at AFEES on May 20, 1968, the registrant exhibited no overt psychiatric disqualifying defects at the time of the examination.[2] Therefore, no further

---

1. No person shall be inducted into the Armed Forces for training and service or shall be inducted for training in the National Security Training Corps under this title * * * until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense * * * 50 U.S.C.App. § 454(a).

Paragraph 2–33 of AR 40–501 provides:

2–33. Psychoneuroses

The causes of rejection for appointment, enlistment, and induction are—

a. *History of a psychoneurotic reaction* which caused—

(1) Hospitalization.

(2) Prolonged care by a physician.

(3) Loss of time for normal pursuits for repeated periods even if of brief duration, or

(4) Symptoms of behavior of a repeated nature which impaired school or work efficiency.

b. *History of a brief psychoneurotic reaction* or nervous disturbance within the preceding 12 months which was sufficiently severe to require medical attention or absence from work or school for a brief period (maximum of 7 days).

2. Regarding medical examination, Army Regulation 601–270 provides:

4–16. Responsibilities

* * * *

b. *Chief, Medical Examining Section* (AFEES). The senior military Medical Corps officer assigned to duty at each AFEES will act in the capacity of

psychiatric examination was necessary at that time. See United States v. Shunk, 438 F.2d 1204 (C.A. 9, 1971); United States v. Haifley, 432 F.2d 1064, 1966 (C.A. 10, 1970). Moreover, this evaluation could be changed after the proper military authorities had a longer time interval to observe the registrant as an inductee.[3]

## II.

At his request some three months later a special form (SSS 150) for conscientious objectors was mailed to him by the local board on April 18, 1969. Thereafter the board received two letters, one on April 30th, and the other on May 30th, written on behalf of the registrant. The first letter stated:

"This is to certify that Richard Powell has been coming to me for personal counseling one hour a week for the past fourteen weeks. I am a counselor on the staff of the Counseling Center, Inc., 317 N. Easton Road, Willow Grove, Pa., 19090 . . . It

is our opinion that Mr. Powell is emotionally unfit for the armed service, and that it would be in the best interest of both the service and Mr. Powell if he were not inducted."

The second was from Dr. Michael Serber, a psychiatrist. The letter stated that the registrant's history reveals an extensive use of narcotics, visits to hospital emergency rooms and doctors' offices with complaints that he could not stand up, see straight or felt that his heart was going to stop beating. To the best of the doctor's knowledge, according to the letter, the registrant had stopped taking drugs as of early March, and that he believes the registrant is a latent schizophrenic who could not tolerate the stress of drug use and that he felt that the registrant is not a suitable candidate for induction at this time. The registrant did not request a medical interview nor did the board notify him to present himself for such a review at the local board.

Chief of the Medical Examining Section. As Chief of the Medical Examining Section, he will be responsible to the AFEES commander for the accomplishment of all medical examinations conducted in his section. It is incumbent upon each chief of section to exercise sound professional judgment in making final determination of an individual's medical acceptability for military service. He will insure that a high quality of medical examination is performed in every case. The quality of the medical examination will not be compromised for any reason. * * * The Chief, Medical Examining Section, is responsible for the following specific functions:

(1) Shall be designated the physical profiling officer and upon completion of the medical examination shall complete the physical profile (item 76, SF 88) as prescribed in chapter 9, AF 40–501.

(2) Will determine when it is necessary to obtain medical services, including specialty consultations, from another Federal medical facility or from civilian sources to supplement the capability of his section. The services will be performed normally at the AFEES; however, when such action is not feasible, the services may be performed at a Federal facility or civilian facility, provided the examinee remains under the

jurisdiction of the Chief, Medical Examining Section, during the entire period of the services.

\* \* \* \* \*

*h. Medical examination (male).*

(1) *Clinical evaluation.*

\* \* \* \* \*

*(b) Psychiatric evaluation.* A specific psychiatric evaluation will be made by the Chief, Medical Examining Section, whenever the examining physician has reason to question the examinee's emotional, social, or intellectual adequacy for military service. * * * The mere possibility that a psychiatric condition will arise later in the military service should not be a sufficient reason in itself for disqualification; * * *. The short time afforded the medical examiners at the AFEES does not permit them to arrive at a proper psychiatric functional evaluation for profiling purposes. A more desirable time for evaluating the individual's functional ability from a psychiatric standpoint is during his basic training period. Therefore, any examinee who meets the current psychiatric standards for military service will be profiled 1 (no profile limitation), under the "S" factor in the PULHES system.

3. See AR 601–270, paragraph 4–16h(b), footnote 2 *supra.*

On July 9, 1969, the board received the registrant's filled out conscientious objector form. In explanation of when and from whom or what source he acquired the religious belief which is the basis of his claim, the registrant wrote that he was not able to put his beliefs together so that he knew what he believed and was not able to express it until he met Ellis Johnson, a chaplin at the Philadelphia State Hospital in late January of 1969. The date for reporting for induction was January 17, 1969. Under date of July 18, 1969, the following notation appears in the registrant's file: "Local Board Members considered SSS Form 150 and found there was no change in the registrant's status over which he had no control." Twenty-one days later the board notified him that his Form 150 was reviewed and they found no change in his status, and that, therefore, he would be retained in Class I–A. The registrant was indicted on February 19, 1970. Trial, without a jury, was held on June 1, 1970, and was resumed on the 8th and 11th of that month. The district court, in adjudging the registrant guilty on July 23, 1970, found that he "lacked utterly that sincerity of belief which is the hallmark of conscientious objection. * * *"

 Regarding the two letters, the Selective Service Regulations do provide for a medical interview by the local board for the purpose of screening out at the local board level those registrants who have disqualifying medical conditions. See 32 CFR §§ 1628.1 to 1628.5. If the local board determines that the registrant has a disqualifying medical condition or physical defect it shall review the classification of the registrant and if it finds that he should be placed in some other class, it shall reopen his classification and classify him anew. 32

CFR § 1628.4(d) (2). However, where, as here, the local board has mailed an order to report for induction to the registrant, it may not reopen the classification "unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant has no control." 32 CFR § 1625.2. Even if we assume that the local board was in error in ignoring the two letters, any reopening of the registrant's classification for disqualifying medical conditions would not cancel the prior order to report for induction with which there has been no compliance. United States v. Noonan, 434 F.2d 582 (C.A. 3, 1970).

After the first order to report for induction on January 17, 1969, three months later he asserted his conscientious objector status on a special form provided therefor, which was received by the board on July 9, 1969, some six months after the induction order had issued. Some nineteen days later the board considered the claim, although it had no basis in law for giving any consideration to it, and denied it. In United States v. El, 443 F.2d 925 (C.A. 3, 1971), the court stated, "Having never presented a claim for exemption based on conscientious opposition to war to his local board and having raised the matter for the first time at the induction center, appellant is foreclosed from raising any defense of erroneous classification at his criminal trial."

In Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), the Court stated petitioner was not precluded from asserting his claim as an inductee after he had gone into the Army. See Department of Defense Directive No. 1300.6, § VI(B) (2).[4] Here, the Court stated, "Given the prevailing interpretation of the Army regu-

4. The pertinent part of this section reads as follows:
"2. Pending decision on the case and to the extent practicable the person will be employed in duties which involve the minimum conflict with his asserted beliefs. * * *"

Army Regulation No. 635–20, ¶ 6a (July 31, 1970):
"[I]ndividuals who have submitted formal applications * * * for discharge based on conscientious objection will be retained in their units and assigned duties providing the minimum

lation, we hold that the Court of Appeals did not misconstrue the Selective Service regulation in holding that it barred presentation to the local board of a claim that allegedly arose between mailing of a notice of induction and the scheduled induction date. Accordingly the judgment of the Court of Appeals for the Ninth Circuit is affirmed."

In accordance with the authorities referred to in *Ehlert, supra,* the registrant who objects on the basis that conscientious objection beliefs crystallized after receiving a notice of induction will have an opportunity to obtain an in-service determination of his claim after he "crosses the line" and enters the Army. However, since he challenged the board's order and refused induction into the Army, was indicted, went to trial and was convicted, he has no such recourse now and must serve the sentence imposed.

The judgment of the lower court will be affirmed.

practicable conflict with their asserted beliefs pending a final decision on their application. In the case of trainees, this means that they will not be required to train in the study, use, or handling of arms or weapons. * * * "

See also Department of Defense Directive No. 1300.6, § IV (B) (2).