**UNITED STATES of America**

v.

**Robert Mulson LATHROP, Appellant.**

**No. 71-2107.**

United States Court of Appeals,
Third Circuit.

Submitted April 20, 1972 under 3rd
Cir. Rule 12(6)

Decided May 23, 1972.

George Schumacher, Schumacher & White, Pittsburgh, Pa., for appellant.

David M. Curry, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ADAMS, MAX ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge: .

Robert Lathrop was tried and found guilty in the Western District of Pennsylvania for refusing to report for civilian work of national importance, in violation of the Selective Service Act of 1967, 50 App. U.S.C. § 462(a).[1]

Appellant is a registrant of Local Board No. 63 in Erie, Pennsylvania. In November of 1968, he submitted as required by law, Form 100 (the registrant's initial "Classification Questionnaire"), specifically (a) requesting a I-O (Conscientious Objector) classification, and (b) disclaiming, *inter alia*, any claim to a IV–D ministerial exemption. He subsequently filed a Form 150 ("Special Form for Conscientious Objector"), stating that he was a Jehovah's Witness and again requesting that he be classified I–O. The Board so classified him in September, 1969. There was no appeal.

In February of 1970, Lathrop submitted Form 152 ("Special Report for Class I–O Registrants") which is sent to all conscientious objectors in order for the Board to determine the type of alternative service for which a registrant would be best suited. Lathrop indicated that he preferred assignment to either (a) the "full time ministry"; (b) work at the Watch Tower Bible and Tract Society Headquarters in New York; or (c) work at the Watch Tower Bible and Tract Society, Watch Tower Farm. The Board notified Lathrop that his latter preference—Watch Tower Farm— was approved and that he should secure employment there. He failed to do so, although in May of 1970 he was notified that he had been reached for call. He was subsequently informed of other civilian employment acceptable to the Board but failed to act in regard to any of those options. In June of 1970, ap-

---

1. Lathrop was given a suspended sentence. He was placed on probation for a period of two years on condition that he obtain employment deemed by the Court to be in the national interest.

pellant wrote the Board that although he was still willing to accept alternative service as listed on the 152 Form, he was no longer "eligible" for employment at the Watch Tower Farm. Further negotiations between Lathrop and the Board as to the type of service Lathrop would be required to perform were to no avail since a mutually satisfactory agreement could not be reached. As a result, the Board notified Lathrop that it had selected a position for him: hospital work at the Woodville State Hospital in Carnegie, Pennsylvania. Although required to report on October 9, 1970, he wrote the Board on October 6, 1970, that he would refuse, citing "religious conflicts." He did not report and this indictment followed.

In this appeal Lathrop contends that he was denied due process of three separate occasions: (1) when the Board failed to consider his "claim" for IV–D *ministerial* classification; (2) when the Board refused to reopen his classification when presented with new "facts" establishing a "request" for a change of classification to IV–D; and (3) when the clerk of the Board allegedly refused to supply the necessary application for a IV–D classification.

I

■ Initially, appellant argues that he was denied due process, alleging that the Board should have been aware "that he was not merely claiming a conscientious objector classification" as indicated by the submission of the 150 Form, but in fact desired a IV–D ministerial exemption. Specifically, he contends that the Board was *required* to consider the I–O application as an application for a IV–D classification. This argument is based solely on the fact that in the 150 Form, appellant referred to himself on various occasions as a "minister"—notwithstanding the fact that all Jehovah's Witnesses claim to be "ministers." [2]

There is no evidence that, prior to his failure to report, appellant *ever* formally requested, suggested or even intimated that he wished a IV–D classification. The District Court's summary is particularly apt:

"As we see this case, all we have here is a man who was properly determined to be a conscientious objector and told the board that he was willing to perform certain work of national importance on which the board agreed with him, but who then refused to appear and perform as required by law. He never asked the board for a classification IV–D as a minister and this is apparently an afterthought on his part after he had completed the offense."

In United States v. Pompey, 445 F.2d 1313 (3d Cir. 1971), we stated:

"It is settled that merely because a registrant belongs to a Jehovah's Witnesses, all of whose members claim to be ministers, he does not thereby become automatically entitled to the ministerial exemption under the statute and regulations. Each registrant 'bears the burden of clearly establishing' that he has satisfied all the criteria for the exemption and is thus a minister in the statutory sense." 445 F.2d at 1317.[3]

This burden was certainly not met in the instant case.

■ Finally, it is also dispositive that Lathrop never appealed his conscientious objector classification and is therefore precluded from raising any alleged defects in this initial classification. McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

II

■ Appellant's second argument is that on the basis of facts submitted by him in the 152 Form the Board should

---

2. The Selective Service recognizes certain categories within the religion as eligible for IV–D classification. Appellant does

not claim to be within any of these categories.

3. See also n. 2, *supra*.

have interpreted those facts as a "request" to *reopen* his classification pursuant to Selective Service Regulation 1625.2. He contends that references to the "ministry" contained in the 152 Form should have "alerted" the Board, that while never indicating dissatisfaction with the I–O classification, he nevertheless wished to be considered for a ministerial classification. This argument is presented in the face of appellant's express statement in the 152 Form that he was "prepared to perform alternative service . . ." because he was "conscientiously opposed to participation in war in any form."

Again reference to *Pompey, supra,* is dispositive:

"The defendant argues, however, that every submission of new facts 'carries an implicit request to reopen.' We would agree that a registrant, untutored in the intricacies of Selective Service procedures, should not be required to quote the language of the regulations in order to be afforded all the procedural rights to which he is entitled. *See* United States v. Thompson, 431 F.2d 1265 (3d Cir. 1970); *cf.* United States v. Turner, 421 F.2d 1251 (3d Cir. 1970). But we do think it essential that he indicate in some way that he is dissatisfied with his classification, wishes to have it changed, and is submitting new information for this reason and not merely to comply with his duty to keep the board informed of his current status, physical condition, or address, as required by 32 C.F.R. § 1641.7. To hold otherwise, we believe, would impose an extraordinary administrative burden on the Selective Service System by requiring it to treat every "change

of status" letter as an implied request for a reopening regardless of whether the registrant himself has expressed a desire to be reclassified." 445 F.2d at 1320–1321.

In the instant case the Board was considering a 152 Form, not a "change of status" letter as in *Pòmpey,* and the Board was obviously justified in believing that no request for reopening was made by the submission of that form. In fact, their interpretation was affirmed by appellant himself in his subsequent communications to the Board. Finally, appellant did not mention a request for a IV–D classification during his meeting with the Board on August 26, 1970.[4]

### III

Appellant argues that the clerk's refusal to supply the proper application form for a ministerial exemption on the grounds that Lathrop was not a "formally ordained minister" was a denial of due process. Although the clerk's action was incorrect, *see* 50 App. U.S.C. § 466, the District Court found that if the request was, in fact, ever made, it was made *after* October 9, 1970—the date Lathrop was required to report for alternative service.[5] On appeal, appellant does not discuss this issue and we therefore have no reason to review the District Court's finding. Thus, even if appellant had received the proper form, his belated attempt to change his classification would not constitute a legal defense to the crime charged. United States v. Noonan, 434 F.2d 582 (3d Cir. 1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1190, 28 L.Ed.2d 333 (1971).

The judgment will be affirmed.

4. In his reply brief, appellant, citing our decision in Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970), suggests that the failure of the Board to state reasons for its "refusal to reopen Lathrop's classification" was a denial of due process. As no "request" was made and no *prima facie* case was established, no statement of reasons was necessary. United States v. Pompey, *supra,* 445 F.2d at 1320.

5. Under questioning by the Court, Lathrop was able neither to identify the person who supplied the misinformation nor to remember whether this discussion occurred before or after October 9, 1970. Appellant was also unable to state whether or not he had even dealt with his local board on this occasion since two Selective Service Boards are located in the same office.