**UNITED STATES of America**

v.

**Richard Anthony HUNTER, Appellant, a/k/a Antonio Estrada Sanchez.**

**No. 72–1527.**

United States Court of Appeals, Third Circuit.

Argued March 6, 1973.

Decided May 11, 1973.

---

Robert E. J. Curran, U. S. Atty., Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Sanford Kahn, Egnal & Egnal, Philadelphia, Pa., for appellant.

Before GIBBONS and JAMES HUNTER, III, Circuit Judges, and MUIR, District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

Appellant Richard Anthony Hunter has been convicted by a jury for failure

to report for induction pursuant to 50 U.S.C.A.App. § 462. He is appealing from the denial by the district court of his motion for judgment of acquittal.

He is presenting the same issues to us that he presented to the district court:

1) did the local board's failure to arrange a meeting with the government appeal agent invalidate appellant's induction order;

2) did the local board deprive appellant of due process of law when it failed to consider some statements in a questionnaire as a claim for a hardship deferment;

3) did the failure of the local board to consider a conscientious objector claim presented by appellant after he was indicted for failure to report for induction invalidate his induction order.

To consider his claims, it is necessary to set forth appellant's selective service history in some detail.

1. Appellant was born May 7, 1949 and registered with his local board on September 7, 1967 under the name of Antonio Estrada Sanchez. He indicated that he was a full time high school student due to graduate in June 1969.

2. November 1967. The board wrote to appellant's high school for verification of his status. The school replied that appellant was not on its roll. The board reclassified appellant 1–A and sent him a letter informing him that he had a right to a personal appearance with a government appeal agent who would give him legal counsel on selective service matters.

3. Appellant responded that he did wish a personal appearance. Instead of immediately arranging such an appearance the board answered appellant with the following letter:

"Dear Sir:

"We are in receipt of your letter as of this date in which you request a personal appearance with the Government Appeal Agent.

"If it is for DEPENDENCY OF YOUR MOTHER AND GRANDMOTHER, all you must do is write a letter to our board asking for a hearing with the board members.

"This letter would be placed in your file until after you pre-induction examination—if you are rejected you would be placed in Class I-Y or Class 4-F. No hearing would be necessary.

"If you are found acceptable, you would be granted a hearing with the BOARD MEMBERS and the GOVERNMENT APPEAL AGENT to Discuss your classification in reference to dependency.

"If dependency is the case, we suggest you write the letter immediately. If not, kindly contact me by phone 597–7890 or 597–7891 and I will advise you accordingly."

Appellant telephoned the board and it made a notation on its copy of the letter it had sent to appellant that appellant would have his school forward verification that he was enrolled under the name of Hunter. Appellant apparently made no further request for a personal appearance.

4. May 1968. Appellant returned to the board a current information form. To the dependency question he responded:

". . . [A]s things seem now I will have to answer yes. My mother works for the Board of Education and she will be out of work for the summer. When I get out of school for summer vacation, I will have to get a job."

Having received no verification from appellant's school, the board wrote to it but received no reply.

5. January, 1969. After twice having ordered appellant to report for pre-induction physicals, the board, through its own initiative, learned that appellant was enrolled in school under the name of Richard Anthony Hunter.

6. February, 1969. The board granted appellant a I-S(H) classification effective to May 7, 1969.

7. August, 1969. Appellant was reclassified 1-A.

8. August, 1970. Appellant appeared for a pre-induction physical and was classified acceptable after having failed to obey orders to appear on three previous occasions.

9. November, 1970. Appellant failed to appear for induction.

10. December, 1971. After having been indicted for over three months, appellant submitted a conscientious objector form to the board. The board accepted the form but did not act on appellant's claim.

## FAILURE TO PROVIDE A PERSONAL APPEARANCE

■■ A registrant has a well-established right to see a government appeal agent upon request. 32 C.F.R. 1604.71, Local Board Memorandum No. 82. The government concedes that appellant requested such a meeting and did not receive one, but it argues that under the circumstances of this case appellant was not harmed. It has the burden of proving that no prejudice resulted to appellant because he did not receive such a meeting.

"[O]nce the defendant establishes the deprivation of a procedural right of the magnitude of the right to consult an Appeal Agent, the burden is upon the Government to prove the absence of prejudice beyond a reasonable doubt. Simmons v. United States, 348 U.S. 397, 405–406 [75 S.Ct. 397, 99 L. Ed. 453]; Steele v. United States, 240 F.2d 142, 146 (1st Cir. 1956)." United States v. Fisher, 442 F.2d 109, 115 (7th Cir. 1971). *Accord,* United States v. Purcell, 339 F.Supp. 366 (D. Mass.1972). *See* United States v. Davis, 413 F.2d 148 (4th Cir. 1969); United States v. Jacques, 463 F.2d 653 (1st Cir. 1972).

■ An examination of the record shows that the government has met its burden in this case. The failure to provide a personal appearance in 1967 did not taint the induction order of 1970.

The board did not ignore appellant's request; it answered him with a simple, straightforward letter. As a result of contact initiated by this letter, appellant received a new classification, I-S(H), granting him a student deferment. This alone is enough to distinguish this case from those cited by appellant since he received a favorable classification. The registrants in the other cases were burdened with unfavorable classifications.

Appellant suggests two ways in which he was prejudiced:

1) he claims that he was entitled to a hardship deferment and that a personal appearance would have shown him the proper procedures to follow to apply for one.

2) he claims that he was entitled to a conscientious objector status and did not apply for one because he was unaware that a Catholic could receive one. If he had been given a personal appearance he could have learned the requirements for conscientious objection.

In view of appellant's actions at that time, it is difficult to believe that he was at all concerned with either consideration. One month before his request to see the agent, appellant submitted a questionnaire to the board indicating neither dependency nor conscientious objector claims. The board's letter set out what appellant had to do if he wanted to submit a claim for a hardship deferment, and appellant's phone call indicated that his concern was with a student deferment (which he ultimately received). Unless we are to enact a per se rule of harm whenever a person is deprived of an appearance with an appeal agent, we feel that the government has met its burden in this case.

## HARDSHIP CLAIM

■ Appellant argues that the board's failure to take any action as a result of a statement he made on his

current information questionnaire in May of 1968 invalidates his induction order. He claims that the board had a duty to seek out information from him under United States v. Turner, 421 F.2d 1251 (3d Cir. 1970).

While a local board may have such a duty in certain circumstances, it did not have it in this case. Appellant stated, in response to the dependency question, that: ". . . [A]s things seem now I will have to answer yes. My Mother works for the Board of Education and she will be out of work for the summer. When I get out of school for summer vacation, I will have to get a summer job."

This statement was not sufficient to place upon the board a duty of inquiry. It indicates what it plainly states: that appellant's mother may have been dependent upon him for the time that the schools were not in session. We agree with the conclusion of the district court that this statement was insufficient to place upon the board the necessity of establishing the registrant's belief.

■ Alternatively, appellant cannot now assert this claim because he failed to exhaust his administrative remedies. *E.g.* McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). After the May letter in question here, he was reclassified from 1-A to I-S(H). He never appealed his classification. Nor did he ever again indicate to his board that he was concerned over a hardship claim even though he was to have numerous other contacts with it.

## CONSCIENTIOUS OBJECTOR CLAIM

Appellant submitted his conscientious objector form one year after refusing induction and three months after his indictment. The board refused to consider this claim, and appellant contends that it was error for it to do so.

A large number of appellate decisions have held, however, that board action on a claim for reclassification submitted after the registrant has refused to submit for induction cannot be a defense to a charge of failing to report for induction. *See e. g.* United States v. Lathrop, 460 F.2d 761, 764 (3d Cir. 1972), cert. denied, 409 U.S. 873, 93 S.Ct. 204, 34 L. Ed.2d 124 (1972); United States v. Neamand, 452 F.2d 25, 27 (3d Cir. 1971); United States v. Powell, 449 F. 2d 706, 710 (3d Cir. 1971); United States v. Noonan, 434 F.2d 582 (3d Cir. 1970), cert. denied, 401 U.S. 981, 91 S. Ct. 1190, 28 L.Ed.2d 333 (1971); United States v. Stoppelman, 406 F.2d 127 (1st Cir. 1969), cert. denied, 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769 (1969); United States v. Swierenga, 425 F.2d 696 (6th Cir. 1970), cert. denied, 402 U. S. 972, 91 S.Ct. 1647, 29 L.Ed.2d 136 (1971); United States v. Smogor, 411 F.2d 501 (7th Cir. 1969), cert. denied, 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440 (1969); United States v. Roberts, 443 F.2d 1009 (8th Cir. 1971); United States v. White, 447 F.2d 1124 (9th Cir. 1971), cert. denied, 404 U.S. 1049, 92 S. Ct. 714, 30 L.Ed.2d 740 (1971); United States v. Lowell, 437 F.2d 906 (9th Cir. 1971); United States v. Hart, 433 F.2d 950 (9th Cir. 1970); Palmer v. United States, 401 F.2d 226 (9th Cir. 1968). In several of these cases the local board refused to take any action at all. United States v. Lathrop, *supra*; United States v. Hart, *supra*; United States v. Swierenga, *supra*; United States v. Stoppelman, *supra*; United States v. Palmer, *supra*. And in one of them, the registrant presented exactly the same argument presented to us: that he was unaware that a person of his faith could qualify as a conscientious objector. United States v. Stoppelman, *supra*.

■ Thus even if a local board has the power to reclassify a registrant when he submits a claim after refusing induction,[1] appellant has no right to

---

1. It has been held that local boards have no such power, *see e. g.* United States v.

Lowell, *supra*; United States v. Lloyd, 431 F.2d 160 (9th Cir. 1970) and United

such reconsideration and cannot complain when he does not receive it.

As Judge Aldisert of this circuit said in United States v. Noonan, *supra,* 434 F.2d at 585:

"Accordingly we hold that appellant cannot convert his belated attempt for a reopening of his classification—an attempt which he did not undertake until May 26, 1968—into a legal defense to the crime he committed two months earlier on March 28, 1968 [when appellant was supposed to have been inducted]." [2]

Against the array of authority cited against his position, appellant presents United States v. Fargnoli, 458 F.2d 1237 (1st Cir. 1972) and two district court decisions, United States v. Anderson, 4 S.S.L.R. 3661 (N.D.Cal.1971); United States v. Grochowski, 2 S.S.L.R. 3380 (E.D.Wis.1970), appeal dismissed for lack of jurisdiction, 454 F.2d 655 (7th Cir. 1971); dismissal affirmed on rehearing, 454 F.2d 657.

*Fargnoli* is factually distinguishable from this case. The appellant in *Fargnoli* constantly held his beliefs. But until the Supreme Court's decision in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), a conscientious objector classification was not available to people with appellant's beliefs. Since that case was decided after appellant's refusal to submit to induction, since the court determined that *Welsh* was to be given retroactive effect, and since *Welsh* was considered a "dramatic change" in the law, the court remanded the case for a determination as to whether appellant's beliefs qualified him under the *Welsh* standard. Here there was no change in the law; appel-

lant was only mistaken as to its application to him.

And we do not think that *Anderson* and *Grochowski* can stand against the weight of appellate authority previously cited. Not only are we bound by *Noonan,* but we find the policy reasons behind that decision and the decisions of the other circuit courts on this issue are persuasive. As the First Circuit stated in United States v. Stoppelman, *supra,* 406 F.2d at 132, 133:

"Were the law to permit registrants to remain silent after being ordered to report for induction, to refuse induction (or to fail to appear for induction) and only subsequently by a first request for reopening of their status on grounds of conscientious objection to compel board consideration of the request, a premium would be placed on dilatory tactics, on a deliberate strategy of non-compliance, or on extreme diffidence and neglect—or a combination of all. Moreover, such an indulgence granted to the registrant who fails to report for and submit to induction would discriminate against the registrant who pursued his rights in a timely manner, was unsuccessful, but dutifully reported for and submitted to induction. Such a person could well reflect that the day of reckoning is better postponed by sleeping on one's rights." [3]

Appellant attempts to distinguish *Noonan* by stating that although he held the same beliefs before and after he had refused to submit to induction, he did not become aware until after he was indicted that as a Catholic he could qualify for conscientious objector status. Appellant's brief in *Noonan* indicates

States v. Noonan, *supra,* 434 F.2d 583 at footnote 2, have held that a state director may in his discretion reconsider a claim after an applicant has refused to report for induction (or order a local board to reconsider it). There is no evidence that appellant ever presented his claim to the state director. The local board, however, did mail appellant's conscientious objector form to state headquarters where it was filed. The failure of the state director to

act on the claim is tantamount to an exercise of his discretion.

2. We found no fault with the government's contention in *Noonan* that "any subsequent selective service procedural infirmity cannot be interposed as a valid defense to the crime charged." 434 F.2d at 584.

3. We do not mean to say that in this case appellant deliberately used delaying tactics.

that we rejected a similar claim there.[4] In addition, to sanction appellant's excuse would be to invite the delay, non-compliance, diffidence, and neglect against which circuit court decisions have inveighed. Appellant had numerous contacts with his board here and never mentioned anything concerning conscientious objection.

Appellant also contends that our decision in United States v. Ziskowski, 465 F.2d 480 (3d Cir. 1972) "makes it clear that the Board must consider a post-induction order claim. . . ."

*Ziskowski* dealt only with the situation in which an applicant presented his claim before he refused to submit to induction.[5] In addition, in *Ziskowski* the applicant claimed that his beliefs had not matured until after he had received his notice to report for induction. Appellant claims that he held his beliefs both before and after the notice of induction.[6] And finally, in *Ziskowski* the court was concerned with the reasons for the board's discretionary action under 32 C.F.R. § 1625.2. That regulation does not excuse a failure to report for induction, even assuming that appellant had a right to be reclassified after he had submitted his late application. United States v. Roberts, *supra*, 443 F. 2d at 1011 and the cases cited therein. *Cf.* United States v. Noonan, *supra*, 434 F.2d at 585.

As the court in Blades v. United States, 407 F.2d 1397, 1399 (9th Cir. 1969), stated:

" 'There must be some end to the time when registrants can raise a claim of conscientious objection to induction and raise and re-raise an alleged right to review. Any other conclusion would result in chaos.' Boyd v. United States, 9 Cir., 1959, 269 F.2d 607, 612."

In conclusion, appellant has throughout his brief made reference to the fact that appellant's board did not deal fairly with appellant who was ignorant of selective service procedures. We think that the board was both fair and open-minded in its dealings with the registrant. It excused five failures of appellant to report for physicals and postponed his induction date once. There is nothing in the record to indicate it was guilty of any impropriety.

The judgment of the district court will be affirmed.

GIBBONS, Circuit Judge, dissenting.

In this criminal case we are presented with three procedural defaults in the Selective Service administrative process. Two of these, by the Selective Service authorities, are excused by the majority. One, by the registrant, is enforced so as to exact a forfeiture of a possible defense, resulting in criminal conviction and sentence. The approach to the Selective Service System administrative process which puts the federal courts in the position of enforcing such anomalous results makes me decidedly uncomfortable. My discomfort could be avoided in this case, however , because there is authority, which we should follow, justifying a reversal of the conviction.

---

4. " . . . When appellant was asked at trial why he did not submit to induction, he testified that on the basis of the considerable reading about the war in Vietnam which he had done after he left school, he reached the conclusion that he could not take part in what he felt was an illegal war in which the Geneva and Nuremberg Conventions were being violated. However, at that time, he did not feel that his feelings were strong enough or of the type to qualify him as a Conscientious Objector. (p. 15 of brief for appellant *Noonan*)."

5. The court in *Ziskowski* noted that although appellant's conscientious objector form was submitted after the appellant's original induction date had passed, that date was postponed several times.

6. In this situation, where the registrant had ample time to notify the board of his claim or to question it concerning the requirements for conscientious objection, he is not entitled to have his classification reopened. United States v. Kroll, 400 F.2d 923 (3d Cir. 1968).

In the district court, Judge Weiner excused the fact that the local board had not considered the defendant's claim for conscientious objector status. He reasoned:

"Finally, it is not disputed that the defendant did not apply for a conscientious objector's status until after he had received his notice of induction. Since Ehlert v. United States, 402 U. S. 99 [91 S.Ct. 1319, 28 L.Ed.2d 625] (1971) a local board is not required to consider Conscientious Objector claims first made after an induction order is issued. To avoid the *Ehlert* rule the defendant asserts that he had formed beliefs prior to the time that he received his notice of induction. He argues that *Ehlert* applies solely to situations where the belief arose between the mailing of a notice of induction and the scheduled induction date and therefore does not rule out the defendant's contention. We disagree. It is our opinion that a conscientious objector's claim lodged with a local board after receipt of a notice of induction comes within the *Ehlert* decision and the fact that there is an allegation that the belief was solidified prior to the mailing of the notice will not furnish a base for distinction."

In United States v. Ziskowski, 465 F.2d 480, 484–485 (3d Cir. 1972), and in United States v. Shomock, 462 F.2d 338, 344 (3d Cir. 1972), we rejected the construction of *Ehlert* adopted by Judge Weiner because under AR 635–20 ¶ 3(b)(1) the post induction administrative procedure for consideration of a conscientious objector claim, upon which the *Ehlert* opinion relies in approving rejection by the Selective Service System of late claims for conscientious objector classification, actually would be unavailable. Both in *Ziskowski* and in *Shomock* the convictions were reversed, without prejudice to reprocessing by the Selective Service System. The only distinction between this case on the one hand and *Ziskowski* and *Shomock* on the other is that here the registrant filed his claim not only after receipt of a notice of induction but also after his indictment. The issue, then, is whether some compelling governmental interest would be interfered with were we to apply the *Ziskowski-Shomock* rule to a case where the claim is both post notice and post indictment.

Appellant claims that he did not raise his conscientious objector claim sooner because, although he held such beliefs, he was under the erroneous impression that Roman Catholics could not qualify for a I-O classification. The reasons for imposing the requirement of exhaustion of administrative remedies before the defense of erroneous classification will be considered in a Selective Service Act criminal prosecution are twofold. First, it is considered desirable that the agency develop and then apply its expertise to a factual record in reaching a discretionary result. Conscientious objector claims are particularly appropriate for such expert agency consideration. Second, the doctrine contributes to the orderly working of the administrative process. McGee v. United States, 402 U.S. 479, 484–486, 91 S.Ct. 1565, 29 L. Ed.2d 47 (1971); McKart v. United States, 395 U.S. 185, 193–194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Neither of these reasons militate against applying the *Ziskowski-Shomock* rule to this case. If the district court finds that a registrant was genuinely mistaken as to his eligibility for a I-O classification it can return the case to the local board and allow it to develop the facts and exercise its expertise. There is no more reason in the post indictment than in the preindictment post notice situation why this cannot be done. The approach would not lead to any wholesale bypassing of the administrative process, because before a district court returned a case to a local board it would have to find that there had been a genuine misunderstanding as to eligibility under the law for the classification.

This approach was taken in United States v. Fargnoli, 458 F.2d 1237 (1st Cir. 1972). As the majority points out, *Fargnoli* has the additional factor of a

change in the law announced in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). But the First Circuit drew no distinction between an appellant whose mistaken belief as to the law was shared by the lower federal courts and an appellant whose mistaken belief was his alone. The Selective Service System has no compelling interest in inducting those persons eligible for exemption or deferments who through ignorance only learn of their eligibility at the eleventh hour. The relationship between the System and the registrant is not supposed to be adversary. United States v. Turner, 421 F.2d 1251, 1254–1255 (3d Cir. 1970). Other cases have remanded to the local board for consideration of post indictment claims. United States v. Shields, 416 F.2d 935 (7th Cir. 1969) (per curiam), vacated on other grounds, 401 U.S. 1007, 91 S.Ct. 1247, 28 L.Ed.2d 542 (1971) (per curiam) (change of law situation); United States v. Anderson, 4 S.S.L.R. 3661 (N.D.Cal.1971); United States v. Grochowski, 3 S.S.L.R. 3380 (E.D.Wis.1970), appeal dismissed for lack of jurisdiction, 454 F.2d 655 (7th Cir. 1971), dismissal affirmed on rehearing, 454 F.2d 657 (7th Cir. 1971); United States v. Hansen, 314 F.Supp. 91 (D.Minn.1969). Nothing in the opinion in United States v. Noonan, 434 F.2d 582 (3d Cir. 1970), cert. denied, 401 U. S. 981, 91 S.Ct. 1190, 28 L.Ed.2d 333 (1971), is contra to *Fargnoli*, and I do not consider myself bound by what is in appellant's brief in that case and not in the opinion.

I would follow the *Ziskowski, Shomock* and *Fargnoli* cases. Since the question of whether appellant was genuinely mistaken as to his eligibility for a conscientious objector classification was never submitted to the trier of fact I would reverse the conviction and remand for a new trial. If the trier of fact found that appellant was in fact genuinely mistaken as to eligibility the district court should dismiss the indictment without prejudice to reprocessing by the Selective Service System.