UNITED STATES of America, Appellee,

v.

John E. FARGNOLI, Defendant-Appellant.

UNITED STATES of America, Appellee,

v.

Joseph R. FARGNOLI, Jr., Defendant-Appellant.

Nos. 71-1369, 71-1370.

United States Court of Appeals, First Circuit.

Argued March 7, 1972.

Decided April 25, 1972.

**1238**

Marvin M. Karpatkin, New York City, with whom Steven Delibert and Melvin L. Wulf, New York City, were on brief, for John E. Fargnoli, appellant.

Seth K. Gifford, Providence, R. I., by appointment of the Court, for Joseph R. Fargnoli, Jr., appellant.

Constance L. Messore, Asst. U. S. Atty., with whom Lincoln C. Almond, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellants John and Joseph Fargnoli were convicted in jury-waived trials, 332 F.Supp. 1122, 1125, of refusing to submit to induction in violation of 50 U.S.C. App. § 462(a). Each argues that he was at the time of refusing induction, John on November 6, 1968, and Joseph on January 15, 1969, a "non-religious" conscientious objector entitled to be placed in Class I–O under a retroactive application of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). Although neither presented his claim of conscientious objection to his local board until long after having refused induction, appellants urge that failure to make timely request for the classification should be excused on the ground that not until Welsh was the classification available to one whose beliefs were "non-religious".

■ We think it clear that Welsh should be given fully retroactive application. Shortly after its decision in Welsh, the Supreme Court remanded for further consideration in light of Welsh four cases in which the defendants had refused induction and in which conviction had been affirmed by courts of appeals before Welsh. Morico v. United States, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970). See also Ramos v. United States, 319 F.Supp. 1207, 1216 (D.R.I.1970). Congress has made it a crime to refuse to obey a valid order to report for induction. The very definition of the crime turns upon the validity of the order to report and, in turn, upon the validity of the registrant's classification. To accord Welsh, which interpreted the bounds of a classification, other than fully retroactive effect would be to make what was not a crime for one registrant a crime under the same statute for another registrant with the same beliefs. Cf. United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). Under the circumstances, we do not think it necessary or appropriate to discuss the criteria for retroactivity enunciated in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), criteria developed to govern the retroactivity of constitutional decisions regarding criminal procedure and susceptible only of tortured application here.

The second step in appellants' argument is that despite the general rule requiring exhaustion of administrative

remedies, *see, e. g.,* Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1946); United States v. Quattrucci, 454 F.2d 58 (1st Cir. 1972); United States v. Pringle, 438 F.2d 1216 (1st Cir. 1971), their failure to make timely application to the board is no bar to their now raising claims of conscientious objection. As the Supreme Court has indicated, the general rule is based upon the statutory policy of permitting the Selective Service System "to make a factual record, or to exercise its discretion or apply its expertise." McKart v. United States, 395 U.S. 185, 194, 89 S. Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). In *McKart,* the Court excused the registrant's failure to appeal the denial of a sole surviving son classification, finding the policy inapposite where the Selective Service System's settled interpretation of the statute would have made exhaustion futile. By the same token, the claim of conscientious objection was held in McGee v. United States, 402 U. S. 479, 490, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), to be a fact-laden matter as to which a registrant must exhaust administrative remedies.

We do not read *McGee* as teaching that exhaustion must rigidly be required in all conscientious objector cases. In particular, McGee's claim appears to have satisfied, prima facie, the requirements of the classification as then interpreted by the Selective Service System. His defense did not rest upon the overturning of an official administrative interpretation of the statute.

It might be argued, although the government did not do so, that *Welsh* was a mere reiteration of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Such a position would find some support in the plurality opinion in *Welsh,* which draws parallels between the two cases. Welsh v. United States, *supra,* 398 U.S. at 337, 90 S.Ct. 1792. But Justice Harlan, who concurred on constitutional grounds, and the three dissenting justices did not think the case controlled by *Seeger.* For present purposes, in any event, a sufficient

answer to the argument that *Welsh* was a foregone conclusion is the position of the Selective Service System prior to the decision:

"To be entitled to a classification as a conscientious objector, the registrant's objection to military service must be by reason of religious training and belief. The definition of 'religious training and belief' comports with a standard or accepted understanding of the meaning of religion in American society . . . . However, the use of the word ['religion'] in connection with the selective service law was not intended to be inclusive of morals, or of devotion to human welfare or of policy of government . . . . " [Footnotes omitted.] L. Hershey, D. Omer & E. Denny, Legal Aspects of Selective Service 12 (1969 ed.) (manual for government appeal agents).

On July 6, 1970, shortly after *Welsh* was decided, the Selective Service System issued Local Board Memorandum No. 107, which stated in part that

"The term 'religious training and belief' as used in the law may include solely moral or ethical beliefs, even though the registrant himself may not characterize these beliefs as 'religious' in the traditional sense, or may expressly characterize them as not 'religious'."

The contrast between the two statements is striking—the former is a begrudging version of *Seeger* while the latter is a straightforward acceptance in ordinary language of *Welsh.* However a court might view the progression from *Seeger* to *Welsh,* local boards could not fail to recognize a sharp disjunction between the Director's pre- and post-*Welsh* guidelines. *Cf.* Ramos v. United States, *supra,* 319 F.Supp. at 1214–1215.

It might further be argued that even if exhaustion, in the ordinary sense of the taking of an appeal from an adverse decision of a local board, was not required, the appellants were at least under a duty to submit their claims to the

local board. Regarding a claimed ministerial exemption, which had not been presented to the local board, the Court in *McGee* stated that

"The exhaustion requirement is properly imposed where, as here, the claim to exemption depends on careful factual analysis and where the registrant has completely sidestepped the administrative process designed to marshal relevant facts and resolve factual issues in the first instance." 402 U.S. at 488, 91 S.Ct. at 1571.

But since McGee did not challenge a settled administrative standard, we do not construe the Court's language as deciding the present case. In *McKart*, where the registrant did challenge an administrative interpretation of the statute, the Court left open whether he could have mounted that challenge if he had not presented his claim to the board. 395 U.S. at 198 n. 15, 89 S.Ct. 1657. In one sense, appellants here have a stronger case for excusing failure to present their claims, in that they seek only to take advantage of another's successful challenge rather than themselves to initiate the challenge. Considerations which would counsel a court not to upset an administrative interpretation in the absence of a full record do not apply when the interpretation has already been thrown out.

 In our view, the issue must turn on the clarity of the rejected interpretation and the extent of the change wrought by its replacement. Under the Selective Service policies sketched above, we think it manifest that a "nonreligious" claim would have been rejected prior to *Welsh* and that for registrants with such beliefs *Welsh* was a dramatic change. Accordingly, we hold that a registrant who can demonstrate that at the time of refusing induction he held beliefs which did not qualify under then-existing law but do qualify under *Welsh* is not barred from raising that claim by failure to have presented the claim to his local board.

The government argues vigorously that even if the law is as we hold it to be, neither of the appellants in these cases may avail himself of it. In the government's view, John was at best a selective objector, and Joseph, a religious objector, at the time of refusing induction. The district court, having relied on the exhaustion doctrine, made no finding on this point. We do not think it appropriate to rule in the first instance and express no views. Of the two possibilities for remand, the local board and the district court, neither is entirely satisfactory. Were the relevant question the present views of the appellants, we would of course remand to the local board because of its expertise. But we think the compulsory process and adversary format of the district court would be useful in ascertaining state of mind at an earlier time. And since the inquiry will not be made for the purpose of determining availability for service but solely for the purpose of adjudicating criminal liability, a remand to the local board would distract the board from its ongoing responsibilities.

 Accordingly, as to each of the appellants, we remand to the district court for a determination whether, at the time he refused induction, his beliefs were such as to entitle him to classification as a conscientious objector under the *Welsh* standard but not under the prior standard. A finding in the appellant's favor will both excuse his failure to exhaust and constitute a defense to the criminal charge, in which case the appellant shall be acquitted. A finding against the registrant will either make the exhaustion doctrine apposite or the defense of improper classification inadequate, in which case the conviction shall be affirmed. The burden of proof shall be the civil burden of preponderance of the evidence and shall rest upon the registrant. Placing the burden on the government would be unfair to other registrants who in presenting claims to their local boards are subject to 32 C.F.R. § 1623.2:

"Every registrant shall be placed on [sic] Class I–A . . . except that when grounds are established to place

a registrant in one or more [other classes], the registrant shall be classified in the lowest class for which he is determined to be eligible . . . ."

Appellant Joseph, who submitted a claim for classification as a conscientious objector after having refused induction, makes the additional argument that the local board considered and rejected his application on the merits, without reopening, in violation of the command of Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). *Mulloy* concerned a reopening prior to refusal to submit to induction, but even were that doctrine extended to cover the present case, it would be no defense, United States v. Pringle, 438 F.2d 1216, 1217 (1st Cir. 1971), unless appellant were to prevail on his primary claim that the order to report for induction was invalid. In that eventuality, he would have no need for a second defense.

Judgments vacated; cases remanded for further proceedings consistent with this opinion.