**UNITED STATES of America,**
**Appellee,**

**v.**

**Philip Owen PERSINGER, Appellant.**

**No. 72–1907**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 30, 1972.

Decided Dec. 29, 1972.

---

Naomi W. Cohen, Charleston, W. Va. (Court-appointed counsel) (Harvey M. Cohen, Huntington, W. Va., on brief), for appellant.

Wayne A. Rich, Jr., Asst. U. S. Atty. (John A. Field, III, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

Conscientious objector Persinger appeals from his conviction and sentencing for refusal to report for induction into the military in violation of the compulsory Military Selective Service Act, 50 U.S.C. App. § 462(a). We affirm, but remand to the district court to vacate his conviction if Persinger should now wish to be inducted into the Armed Forces.

Persinger filed with his local draft board Form 150 in which he claimed the status of a conscientious objector and sought classification as "1–A–O." In his representation to the local board that he was conscientiously opposed to war in any form he made perfectly clear that he could not, consistent with his conscience, permit himself to kill or be trained to kill, and that he could not submit to the status of combatant or potential combatant in the Armed Forces. But he said,

I can find nothing, however, with [sic] the framework of my religious beliefs and in the wording of the Selective Service Act that would prohibit my serving as a non-combatant in the Armed Forces, although politically and sociologically speaking, I would consider service of the underprivileged as a civilian to be far more constructive.

The local board granted Persinger's request for 1–A–O status at a personal interview on April 8, 1970. He did not then express any objection to the classification, nor did he indicate to the board that he could not or would not serve as a noncombatant. On May 15, 1970, the board sent Persinger an order to report for induction on June 3, 1970. He failed to appear and on that day addressed a letter to the United States Attorney advising that he had decided to refuse induction into the Armed Forces on grounds of conscience.

Some weeks later Welsh v. United States, 398 U.S. 333, 90 S.C. 1792, 26 L. Ed.2d 308 (1970), was decided and released by the United States Supreme Court. Correctly reading *Welsh* as a relaxation of the previously understood restricted meaning of the phrase "religious training and belief" appearing in 50 U.S.C. App. § 456(j), Persinger filed another Form 150 with the local board in which he took the position that he had always objected to noncombatant military service but had not previously expressed those objections to the board because he considered them to be pri-

marily nonreligious in nature and more a product of ethics. He asked that his file be reopened and his classification reconsidered in light of *Welsh* and his asserted moral and ethical belief that to enter the Armed Forces would be to surrender his moral integrity to an organization basically dedicated to the systematic destruction of human life and would be contrary to his religious belief as redefined by *Welsh*.

The local board refused to reopen his classification, and the Deputy State Director of the Selective Service System, after reviewing the file and the amended Form 150, refused to order the classification reopened.

We cannot say on this record that the refusal to reopen Persinger's classification was arbitrary, capricious, lacking in basic fairness in the due process sense, or even unreasonable. It may well be that Persinger from the very beginning felt conscientiously opposed to induction as a noncombatant. Yet the State Director could reasonably infer that Persinger, an intelligent young man who had attended Yale University, would not vainly seek a status that he knew he could not accept. Persinger was previously aware of the alternative possibility of civilian service in lieu of induction. Although he considered it "far more constructive," he neither asked for that classification (1–O) nor did he indicate to the board inability, whether or not on religious grounds, to accept the classification 1–A–O which he had sought. His explanation is that it would have been useless to ask for 1–O status prior to *Welsh*. But if he could not accept noncombatant service (1–A–O), his request for that classification was also an exercise in futility. The State Director may have concluded that Persinger's objection to noncombatant military service and his 1–A–O classification crystallized after receipt of the notice of induction. In Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L. Ed.2d 625 (1971), the Supreme Court

approved reasonable timeliness rules. The Court recognized that conscientious objection to military service may not crystallize until after induction notices have been received, and held that such persons cannot be "deprived of a full and fair opportunity to present the merits of their conscientious objector claims for consideration under the same substantive criteria that must guide the Selective Service System." *Ehlert, supra,* at 103, 91 S.Ct. at 1323. The Court read the conscientious objection statute, 50 U.S.C. App. § 456(j), to create only one unconditional right: the exemption of conscientious objectors from combatant training and service. Alternative civilian service was put in an inferior and conditional category. The Court made perfectly clear that "requiring those whose conscientious objection has not crystallized until after their induction notices to present their claims after induction would work no deprivation of statutory rights, so long as the claimants were not subjected to combatant training or service until their claims had been acted upon." *Ehlert, supra,* at 103, 91 S.Ct at 1322.

Persinger urges upon us that he is entitled to relief under the rule announced by the First Circuit in United States v. Fargnoli, 458 F.2d 1237 (1972). In that case convictions for refusal to submit to induction in violation of 50 U.S.C. App. § 462(a) were vacated and the district court was instructed on remand to determine as to each defendant "whether, at the time he refused induction, his beliefs were such as to entitle him to classification as a conscientious objector under the *Welsh* standard but not under the prior standard." *Fargnoli, supra,* at 1240. We agree with the retroactive application of *Welsh*, but we think *Fargnoli* is distinguishable from Persinger's case. In *Fargnoli* each of the defendants was a "nonreligious" conscientious objector who had failed to claim the status to his local board because his objection rested solely on moral or ethical beliefs. *Fargnoli* simply held that a regis-

trant who had not previously interposed objection to military service because he held beliefs which did not qualify under then existing law but do qualify under *Welsh* is not barred from belatedly claiming conscientious objector status.

■ The court in *Fargnoli* did not have its attention focused on the problem of late crystallization. It was assumed that from the time of registration on until refusal of induction both defendants were opposed to military service on "nonreligious" grounds. Persinger makes the same contention, but as we have intimated, the State Director could reasonably view the fact situation as one of late crystallization of a viewpoint opposed to noncombatant service. We think communication on the day of induction of a belief that may reasonably be viewed as a late crystallization of viewpoint comes too late in point of time to require reopening of classification by a local board.

Since Persinger had no unconditional right to perform civilian work in lieu of noncombatant service, and since his objection to noncombatant service was not communicated to anyone until after the mailing of his induction notice, and indeed until the day he was scheduled to report for induction, we are inclined to the viewpoint that his only remedy was to submit to induction as a noncombatant and to seek consideration under Army Regulation AR 635–20, ¶ 3. As phrased prior to *Ehlert*, the regulation provided that consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, *when such objection develops subsequent to entry into the military service*. We read *Ehlert* as effectively striking the last italicized clause, for the decision in *Ehlert* is premised upon assurance from the General Counsel of the Department of the Army to the Department of Justice that there exists "no possibility that late crystallizers will find themselves without a forum in which to press their claims." *Ehlert, supra,* 402 U.S. at 107, 91 S.Ct. at 1324.

■ Since Persinger could not have known until *Ehlert* was decided that his remedy, if any, after receipt of induction notice was by administrative appeal within the Department of the Army rather than by petition to reopen his draft board classification, we remand to the district court with these instructions: if Persinger should wish now to submit to induction and thereafter pursue the *Ehlert* remedy within the Department of the Army, his conviction should be vacated. If he does not wish to submit to induction, the conviction will stand affirmed.

Affirmed and remanded with instructions.

WIDENER, Circuit Judge (concurring):

While I concur in the result in this case, I would not want to be estopped from later asserting that every defendant convicted of violating the Selective Service Act should not have a second opportunity to enter the service rather than face imprisonment. It is my understanding that in most, or nearly all, instances, Selective Service Act violators are offered the opportunity to enter the service rather than face prosecution in the district court. In this case, under the particular set of facts here presented, I feel that the defendant has been the victim of terribly bad advice and should be accorded a second chance.