**UNITED STATES of America**
**v.**
**Gene Dwight GALLUPPI.**
**Crim. No. 70-69.**

United States District Court,
E. D. Pennsylvania.

May 2, 1972.

———◆———

John David Egnal, Egnal & Egnal, Philadelphia, Pa., for defendant.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

## FINDINGS OF FACT, DISCUSSION CONCLUSIONS OF LAW AND ORDER

HANNUM, District Judge.

The defendant was tried on December 2, 1971 for violation of 50 App. U.S.C. § 462 (1967). He was charged with the failure to report for civilian employment pursuant to an order issued by his Local Board No. 36, Doylestown, Pennsylvania (hereinafter referred to as the "local board" or "board"), dated January 24, 1969. At the conclusion of all the evidence, leave was granted to counsel for the submission of proposed findings of fact and conclusions of law and briefs which have now been filed.

### FINDINGS OF FACT

1. Defendant registered with the Selective Service System through Local Board No. 36 on July 12, 1966.

2. In the Form 100 submitted by the defendant at the time of his registration, he claimed to be a minister of the

Jehovah Witness faith, not formally ordained, since the age of ten (10) years. The defendant answered Series VII and VIII of form 100 as follows:

### "Series VII.—MINISTER OR STUDENT PREPARING FOR THE MINISTRY

1. I have been a minister of the <u>Jehovah's Witnesses</u>

(Name of sect of denomination)

and (check one): HAVE X HAVE NOT been formally ordained.

2. I was formally ordained at _____ on (date) _____ by _____.

3. I am a student preparing for the ministry pursuing a full-time course of instruction at the _____

(Name and address of theological or divinity school)

_____ under the direction of _____

(Name of church or

religious organization)

4. I am a student preparing for the ministry under the direction of _____ pursuing a full-

(Name of church or religious organization)

time course of instruction at the _____

(Name and address of school)

leading to my entrance into _____

(Name and address of theological

_____ in which I have been pre-enrolled.

or divinity school)

### Series VIII—CONSCIENTIOUS OBJECTOR

(DO NOT SIGN THIS UNLESS YOU CLAIM TO BE A CONSCIENTIOUS OBJECTOR)

I claim to be a conscientious objector by reason of my religious training and belief and therefore request the local board to furnish me a Special Form for Conscientious Objector (SSS Form No. 150).

Gene Dwight Galluppi
(Signature)"

3. The registrant was sent a Form 150, Conscientious Objector Questionnaire, which he completed and returned in timely fashion on March 16, 1967. The answer to pertinent parts thereto provide as follows:

### "Series II.—RELIGIOUS TRAINING AND BELIEF

1. Do you believe in a Supreme Being? <u>X</u> Yes No

2. Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation.

The Apostle Peter stated at 1 Peter 3:11 to 'seek peace and pursue it.' Jehovah's Witnesses maintain an uncompromising neutrality as to the world's political and military affairs. They do not oppose any government program of military conscription or demonstrate against it, but they submit themselves to God's arrangements of things. As 2 Corinthians says, 'Though we walk in the flesh, we do not wage warfare according to what we are in the flesh. For the weapons of our warfare are not fleshly.'

I claim 'exemption from both combatant and non-combatant training and service in the Armed Forces' because I adhere to the Bible's counsel at Exodus 20:5 which says, 'I Jehovah your God am a God exacting exclusive devotion.'

Because of my Bible training and the admonition given at Genesis 9:6 that says, 'Anyone shedding man's blood, by man will his own blood be shed', and the counsel at Deuteronomy 5:15 which says, 'You must not murder,' I claim exemption from the Armed Forces.

3. Explain how, when and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above.

I received my training from my mother who studied with one in the books from Paradise Lost to Paradise Regained and Let Your Name Be Sanctified, approximately 2 years before I was baptized and became one of Jehovah's Witnesses.

4. Give the name and present address of the individual upon whom you rely most for religious guidance.

Mr. Richard Rodehauser, 1111 Doylestown Pike, Quakertown, Pennsylvania.

5. Under what circumstances, if any, do you believe in the use of force?

The only circumstance where force would be used would be in self-defense. I heed Jesus word's at Matthew 5:39 which says; 'Do not resist him that is wicked; but whoever slaps you on the right cheek, turn the other also to him.' However, if that slap were to do bodily harm to me I am obligated to defend myself. Also, learning the arts of self-defense such as judo, karate, and jujitsu would be taking time away from serving my heavenly father. The message I bring from house to house is not one that would make a person become hostile toward me and so I have no need to be afraid. My motive is to teach one willingly and not forcefully.

6. Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious convictions.

Jehovah's Witnesses have five meetings a week. A congregation book study during the week where we study a publication of the Watchtower Bible and Tract Society of Pennsylvania, and where I orally express answers to the questions asked. Also during the week is the Ministry School and the Service Meeting. I regularly participate in the Ministry School by giving oral prepared talks on certain subjects which help me to prepare sermons for my door to door work. On Sunday we have two more meetings. The public talk followed by the Watchtower study. The public talk is a lecture on a topic of much interest today. During the Watchtower study I make 'public declara-

tion of my faith' by again answering questions asked. I regularly attend these meetings which build up my religious convictions.

Also, I regularly participate in the door to door activity on weekends proclaiming the good news of Jehovah's Kingdom to all those I meet as is the counsel at Acts 20:20: 'While I did not hold back from telling you any of the things that were profitable nor from teaching you publicly and from house to house.'

7. Have you ever given public expression, written or oral, to the views herein expressed as the basis for your claim made in Series I above? If so, specify when and where.

Yes, as was stated in question six above, because of my regularly attending these meetings and participating in them, accepting either combatant or noncombatant duty would be going against my convictions. I rely on the scripture at Matthew 22:37-40: 'You must love Jehovah your God with your whole soul and with your whole mind.' This is the greatest and first commandment. The second, like it, is this, 'You must love your neighbor as yourself.' Therefore, one would not go out and do damage to himself so certainly he wouldn't do it against his neighbor. For this reason I could not lift up arms against another person.

### Series IV.—PARTICIPATION IN ORGANIZATIONS

1. Have you ever been a member of any military organization or establishment? If so, state the name and address of same and give reasons why you became a member.

No

2. Are you a member of a religious sect or organization? X Yes
_____No If your reply to item 2 is "Yes," complete items (a) through (e).

(a) State the name of the sect, and the name and location of its governing body or head if known to you.

Jehovah's Witnesses; Watchtower Bible and Tract Society of Pennsylvania, Brooklyn, New York.

(b) When, where, and how did you become a member of said sect or organization?

On August 19, 1966, when I was Baptized as one of Jehovah's Witnesses in Baltimore, Maryland.

(c) State the name and location of the church, congregation or meeting where you customarily attend.

Quakertown Congregation of Jehovah's Witnesses; 9th and Mill Streets, Quakertown, Pa.

(d) State the name, title and present address of the pastor or leader of such church, congregation, or meeting.

Mr. Stephen Waller; congregation servant; 14th Street, Quakertown, Pa.

(e) Describe carefully the creed or official statements of said religious sect or organization in relation to participation in war.

John 17:16. 'They are no part of the world just as I am no part of the world.' I have learned to spread the message of God peacefully out of the love for my heavenly father and if he says to be no part of

this world I am obligated to heed his command. This comment brings another scripture to my mind which summarizes this question. It is found at 1 John 2:15 and reads: 'Do not be loving either the world or the things in the world. If anyone loves the world, the love of the father is not in him.' Because of the love for my Creator I could not with a free conscience participate in either combatant or noncombatant service because I feel I would be doing harm to my fellow man.

3. Describe your relationships with and activities in all organizations with which you are or have been affiliated, other than military, political, or labor organizations.

I am a congregation publisher of Jehovah's Witnesses."

4. On March 16, 1967, the defendant was classified 1–A by the local board.

5. The Form 150, Conscientious Objector Questionnaire was received by the local board on March 16, 1967.

6. By letter dated March 21, 1967, the defendant requested a personal appearance. The letter provides as follows:

"Local Board No. 36
Pearce Building
108 North Main Street,
Doylestown, Pa. 18901

Dear Sirs:

I would like to have a personal appearance with the board. I claim to be a conscientious objector; but when my classification came, I was classified 1–A. As was stated in my form for conscientious objectors, I cannot accept combatant or non-combatant service in the Armed Forces.

I follow the advice at John 17:16 where Jesus said: 'They are no part of the world, just as I am no part of the world.' We as Jehovah's Witnesses are imitators of Jesus and, therefore, must follow his commands as the Apostle Peter said at Acts 5:29: 'We must obey God as ruler rather than men.'

Thank you for your cooperation.

Sincerely yours,
/s/ Gene Galluppi
Gene Galluppi"

7. During his personal interview on April 19, 1967 the defendant requested both (IV–D) and a (I–O) classification. The local board memorandum of that appearance provides:

"GALLUPPI, Gene Dwight SSS No. 36–36–48–215

Board Members present: Daniel Atkinson – chairman
 William Greenawalt
 Edward Keck
 Russell Schanley

Registrant appeared for appearance as scheduled. Stated that he desires a 4–D classification or a I–O classification. He has been associated for six years with the Jehovah's Witness. He goes from house to house preaching as his church directs. He is employed full-time during the week but devotes week-ends to preaching. Registrant claims he has heart murmur.

Class I–A local board—vote of 4 — 0

Testimony taken by Eliz. Maeraz—Assistant Clerk"

8. On the same date as the personal appearance, April 19, 1967, the defendant was classified I–A by the local board. This was the last time the local board classified the defendant.

9. Local Board Memorandum No. 82, issued March 6, 1967, is as follows:

"LOCAL BOARD MEMORANDUM NO. 82
ISSUED: MARCH 6, 1967
AS AMENDED: JULY 27, 1967
RESCINDED: NOVEMBER 2, 1970
SUBJECT: NOTICE TO REGISTRANTS RE GOVERNMENT APPEAL AGENTS.

1. Whenever a local board places a registrant in either Class I–A, I–A–O, or I–O it shall, at the time the Notice of Classification (SSS Form 110) is mailed, also inform the registrant that the Government Appeal Agent is available to advise him on matters relating to his legal rights, including his right of appeal.

2. If the registrant desires to consult the Government Appeal Agent, he should notify the local board clerk, who will arrange a time and place for such meeting.

3. When the Government Appeal Agent is not available at the time, and the registrant wishes advice, the local board clerk will arrange a meeting with an associate Government Appeal Agent or an Advisor to Registrants.

Lewis B. Hershey,
Director."

10. The defendant was not advised by the Local Board regarding a right to consult with a government appeal agent, however, defendant in fact prosecuted an appeal from the Local Board's (I–A) classification of April 19, 1967.

11. By letter dated April 26, 1967, the defendant appealed his classification to the state appeal board. The letter provides as follows:

"Local Board #36
Pearce Building
108 N. Main Street,
Doylestown, Pa.

SUBJECT: ATTENTION APPEAL BOARD

Gentlemen:

My name is Gene Galluppi and my Selective Service Number is 36 36 48 215.

I would like to make an appeal to the appeal board on the classification I received on April 20, 1967. After my personal appearance on April 19, 1967, I was reclassified I–A. I feel the local board overlooked the entire reason for why I requested a personal appearance. I believe I proved, from my answers to those questions asked on the Conscientious Objector's form, that I was worthy of a Conscientious Objector's classification.

It seemed to me from questions asked at the personal appearance that the local board was more concerned with where and what type of work I did and also my father's attitude toward the matter rather than *my* attitudes and *my* convictions. These questions, I don't feel, enter into the matter of whether I am worthy of a conscientious Objector's classification or not. I answered the questions on the Special Form for Conscientious Objector to the best of my knowledge and that they are true, as is stated on the last page of the form.

I feel the local board overlooked especially questions 6 and 7 of Series II. These two questions describe my activity within the congregation. Enclosed you will find two letters written by servants of the congregation supporting my convictions. I would like these placed in my file after you have considered them.

I would like to close this letter with a scripture that supports my position toward service in the military. 2 CORINTHIANS 10:3: 'Though we walk in the flesh, we do not wage warfare according to what we are in the flesh. For the weapons of our warfare are not fleshly, but powerful by God for overturning strongly entrenched things.'

As Jehovah's Witnesses the love of our father is uppermost in our minds. This love motivates us to announce his 'kingdom of heaven' and to 'vindicate his great and glorious name world wide.' Because I have come to understand the importance of serving my Creator I claim to be conscientiously opposed to both combatant and noncombatant service in the military.

I hope I have helped you to see my position regarding my ministry. Thank you for your cooperation.

Sincerely yours,

/s/ Gene Galluppi

Gene Galluppi"

12. On April 28, 1967, the local board received two letters, one from Robert G. Wyllie, and one from Richard L. Rodenhouser. The Local Board did not consider this correspondence in connection with its classification decision.

13. The letter from Mr. Rodenhouser provides as follows:

"Local Board No. 36
Pearce Building
108 N. Main St.,
Doylestown, Pa. 18901

Gentlemen:

I am writing to you to help you honestly and properly classify Gene Galluppi. Having known Gene for 6 years I can tell you some things about Gene that perhaps you have not come to know as yet.

Serving as the present School Instructor in the Quakertown Congregation of Jehovah's Witnesses I have been impressed with his advancement as a student. Gene is a regular attender at our meetings personally taking part in many of these. I have personally accompanied Gene in the door to door preaching activity that Jehovah's Witnesses engage in. All of these things prove to me that Gene is very sincere in his beliefs and will continue to advance if allowed the opportunity.

For these reasons and to the fact that Jehovah's Witnesses throughout the declare their neutrality, I believe Gene should be classified I–O A Conscientious Objector.

Sincerely yours,

/s/ Richard L. Rodenhouser
Richard L. Rodenhouser
Theocratic Ministry School
Instructor"

14. The letter from Mr. Wyllie provides as follows:

"Local Board #36
Pearce Building
108 N. Main Street
Doylestown, Pa.

(In Reference to Gene Galluppi)

Gentlemen:

The purpose I am writing this letter is to verify why Gene Galluppi, is desiring IV–D classification for Minister. Gene's desire to serve God by preaching and teaching the Bible was realized when he came to a full understanding of the Holy Scriptures.

Since early childhood he has been trained in his home the principals and doctrines as contained in God's word the Bible. He has been enrolled in the Theocratic Ministry School since 1958. This is a school that prepares ministers to preach and teach effectively. This takes much time and study on part of the student. Many hours are spent by the student to prepare student sermons which he gives from the puplit. [sic]

He has been actively preaching and teaching Bible principals and Bible doctrines since 1960. After coming to an accurate knowledge of God's purposes he made his dedication to the Most High God Jehovah and was formally ordained as a minister on August 19, 1966.

As an ordained minister of Jehovah God, Gene has been active in the preaching work since his dedication. The people in the community in which he lives recognize him as a minister of Gods Word the Bible. Gene is presently serving with the Quakertown Congregation of Jehovah's Witnesses.

I hope the information in this letter will help you to recognize that Gene Galluppi is a minister of the Most High God Jehovah, and is desiring the classification for a minister. It has been a privilege to pass this information on to you, and if I can be of further assistance to you, please feel free to contact me.

Sincerely yours,

/s/ Robert G. Wyllie
Robert G. Wyllie"

15. Although the Local Board never considered the correspondence submitted by Messrs. Wyllie and Rodenhouser, the Appeal Board received the Local Board's record as it existed on May 1, 1967, and therefore did have contained in it these two letters.

16. The Appeal Board submitted the defendant's file to the United States Attorney, Eastern District of Pennsylvania for an advisory recommendation on May 15, 1967.

17. On January 19, 1968 the Department of Justice report concluded with a recommendation that the defendant be placed in Class (I–O), since "there is no question about the registrant's sincerity . . . ."

18. On January 25, 1968 a copy of the recommendation received from the Department of Justice was mailed to the defendant advising him that he could file a written reply with the Appeal Board concerning this recommendation within thirty days.

19. In connection with his appeal the defendant wrote the following letter to the Appeal Board of Pennsylvania.

"Appeal Board of Pennsylvania
Eastern Federal Judicial Dist.
Federal Building
1421 Cherry Street
Philadelphia, Penna. 19102

Gentlemen:

In reply to your letter stating my conscientious objector's claim, I would like to say this. I appreciate the fact that you understand my position as one of Jehovah's Witnesses. However, I would like to make this clear that in no way can I conscientiously conform to any service connected with the military.

My real claim was that of a minister of my God Jehovah. Because I am not as fortunate as some others, I am not able to be at that service full time. I do have a certain responsibility toward my parents and my wages from a full-time job are the only way I can help them.

Because there was much doubt concerning my job at the U. S. Gauge, I could not have a clear conscience by continuing to work there. So as not to stumble others or to lead them into the wrong line of thinking, I decided to find another job. As of January 29, 1968, I started working as a helper in a machine shop in Warminster, Pennsylvania. The name of the company is METCO.

Again, I would like to thank you for your cooperation and your time; and I hope you are able to see my position as a minister of the one and only true God Jehovah.

Sincerely yours,
/s/ Gene Galluppi
Gene Galluppi"

20. On March 12, 1968, the appeal board placed the defendant in Class (I–O).

21. No reasons were stated by the local board or the appeal board as to why the defendant was not placed in class (IV–D).

22. January 24, 1969, on an order to report for civilian work and statement of employer, SSS Form 153, was mailed to the defendant with a reporting date of February 4, 1969, to the Williamsport Hospital.

23. The defendant failed to report for instructions concerning his civilian work assignment as requested by the local board.

24. On September 1, 1969, the defendant became a Pioneer Minister, assigned to work with the Quakertown, Pennsylvania Congregation.

25. The defendant was not familiar with the statute and regulations governing (IV–D) exemptions.

26. The Local Board did not provide the defendant with Forms SSSP–1398, 1399, 1400, and 1401.

27. Form SSSP–1398 provides:

"Dear Registrant:

The Selective Service Regulations provide that a student preparing for the ministry must be under the sponsorship or direction of an organized religious body and must be either pursuing a full-time course of instruction in a recognized theological or divinity school or satisfactorily pursuing a full-time course of instruction leading to entrance into a recognized theological or divinity school in which he is pre-enrolled.

We note that you claim exemption from military service as a student preparing for the ministry. In order to assist you in presenting your claim to this board, we are forwarding you three forms which should be completed and returned to this board not later than two weeks from the date of this letter.

These forms consist of a statement of intention which will be completed by you, a statement of sponsorship which must be completed by the responsible person or persons in the religious organization with which you are affiliated, and a statement of the theological school or seminary in which you are either enrolled or pre-enrolled evidencing such fact. The proper completion and return of these forms will enable your local board to determine if you are eligible for classification in Class IV–D as a student preparing for the ministry.

You will also note that you will be required once a year, between September 15 and October 16, to submit to this local board a statement from the school you are attending evidencing the fact that you are making satisfactory progress in your studies.

For the Local Board:
Executive Secretary"

28. Form SSSP–1399 provides:

"STATEMENT OF THEOLOGICAL SCHOOL OR SEMINARY

A _____ has been accepted for pre-enrollment at
 (Name of Registrant)

the _____ will begin his studies at this insti-
 (Name of theological school)

tution in _____ 19___, and in preparation for entrance will con-
 (Month)

tinue his studies in the following schools or colleges:

B _____is a regularly enrolled full-time day stu-
 (Name of Registrant)

dent satisfactorily pursuing a course of instruction at _____
 (Name of
_____ and is expected to complete his studies in
 theological school)

or about _____ 19___.
 (month)

Signed _____

Title _____

(SEAL)

Date _____

INSTRUCTIONS:

Either "A" or "B" of this form will be completed by the theological school or seminary in which a registrant has been enrolled or pre-enrolled and furnished to him for submission to his local board in substantiation of his claim for exemption from military service as a student preparing for the ministry. The school or the seminary will assume the responsibility of informing the local board promptly if the registrant is dropped from enrollment or pre-enrollment and will, following enrollment, advise the local board once each calendar year, between 15 September and 16 October, whether or not the registrant is making satisfactory progress, in his studies."

29. Form SSSP–1400 provides:

## "STATEMENT OF INTENTION AS STUDENT PREPARING FOR THE MINISTRY

I, _____, hereby declare that I am now enrolled as a
 (Name)

full-time day student at _____ preparing for the _____
 (Name of School) (ministry,

_____ in the _____. I in-
priesthood, etc.) (Name of religious organization)

tend to continue my studies at the following schools:

During the period in which I am a student, I will request the institution I am attending to inform my local board of my scholastic progress between 15 June and 15 July of each calendar year. I will inform my local board promptly of all changes in circumstances which might affect my classification and of all changes of address.

In consideration of the above, I request exemption from military service and classification in Class IV–D.

Date _____ Signed _____

INSTRUCTIONS:

This form, together with Form SSSP–1401 (STATEMENT OF SPONSORSHIP) and Form SSSP–1399 (STATEMENT OF THEOLOGICAL SCHOOL OR SEMINARY) must be submitted to his local board by each registrant seeking exemption from military service as a student preparing for the ministry."

20. Form SSSP–1401 provides:

## "STATEMENT OF SPONSORSHIP

This is to certify that _____ is engaged in a
 (Name of registrant)

full-time course of study in preparation for the _____
 (Ministry,

_____ under the sponsorship and direction of _____
priesthood, etc.) (person or group)

of _____.
 (Religious organization)

It is expected that he will complete his studies and enter his vocation in _____, 19\_\_.
 (Month)

Signed _____

Date _____ Title _____

INSTRUCTIONS:

This form will be completed by the person or persons duly authorized by the sponsoring religious organization and furnished the registrant for submission to his local board in substantiation of his claim for exemption as a student preparing for the ministry. The sponsoring body will assume the obligation of informing the local board promptly if sponsorship is withdrawn and upon completion of studies and entrance into the active ministry."

31. Mrs. A. McCarty, Executive Secretary of Local Board No. 36 in Doylestown, who processed this case, did not know of, nor follow, the provision of SSSP–1369.

32. Form SSSP–1369 provides:

"PENNSYLVANIA STATE HEADQUARTERS
SELECTIVE SERVICE SYSTEM
NORTHWEST OFFICE BUILDING
HARRISBURG, PENNSYLVANIA

31 March 1954

MEMORANDUM:

TO: ALL LOCAL BOARDS

SUBJECT: DETERMINATION OF MINISTERIAL STATUS OF CERTAIN REGISTRANTS

This is presented to assist in the classification of registrants who claim both a ministerial and conscientious objector status.

If the registrant's file does not contain the following information, it is recommended that the listed questions be asked the registrant at the time of an interview or an appearance before the local board, and a record of the questions and answers thereto be included in the registrant's file.

1. How does registrant earn a living?

2. Describe secular employment:

 a. Type of work c. Wages
 b. Hours d. Name of Employer

3. What was registrant's income from secular employment during the past 12 months?

4. Does registrant preach and teach the principles of religion?

 a. If so, how many hours a month?

 b. How many members are there in his local church or religious group?

 c. If the registrant is a member of Jehovah's Witnesses, how many other ministers are there in his Company?

5. If the registrant is a member of Jehovah's Witnesses, give title or titles, if any, registrant holds in this Company.

6. Have registrant list his ministerial duties performed over the past month and hours devoted to each duty.

7. How much of registrant's time over the past month was devoted to selling or distributing literature?

8. With regard to conscientious objectors, state under what circumstances registrant believes in the use of force.

9. If the registrant is a member of Jehovah's Witnesses, determine if he will participate in any war that he understands is authorized by Jehovah.

10. If the registrant is a member of Jehovah's Witnesses, is his conscientious objection based upon the views of the Watchtower Bible and Tract Society, as expressed in the pamphlet 'Neutrality', and the article 'Why Jehovah's Witnesses are not Pacifists'?

11. Does the registrant believe in the use of force in defense of:

 himself? his religion?
 his family? his brethren?
 his home?

12. Is registrant's conscientious objection based primarily upon his desire to preach, or upon his unwillingness to use force?

/s/ Henry M. Gross
Henry M. Gross
State Director"

33. Jehovah's Witnesses are a "recognized church or religious organization" as that term is used in 50 App.U.S.C. § 456(g).

34. The local board's interpretation of the law of (IV–D) exemptions as applied to Jehovah's Witnesses required that a registrant reach the status of full "Pioneer".

35. The defendant attended the Theocratic Ministry School since he was 12 years old.

36. The structure of the Theocratic Ministry School which the defendant attended in 1967 was based on instructions from the World Headquarters of Jehovah's Witnesses, which instructions were applicable to all congregations throughout the world.

37. All members of the congregation are members of the Theocratic Ministry School.

38. The Theocratic Ministry School which the defendant attended, followed a specified curriculum, had a recognized faculty and used an evaluation or grading system.

39. The Theocratic Ministry School meets 5 times per week for approximately 5 hours.

40. The defendant spent about one hour of personal study as advance preparation for the meetings related to the Theocratic Ministry School.

41. No personal study is required by the Theocratic Ministry School curriculum. The amount of hours spent in preparation is totally up to the individual student.

42. The only way a Jehovah's Witness can become a Pioneer Minister is by following the Theocratic Ministry School curriculum.

43. The position of Pioneer Minister is made by appointment of the Watchtower Bible and Tract Society.

44. On September 1, 1969, the defendant became a Pioneer Minister and the local board was so notified.

45. The defendant is, at present, one of three Pioneer Ministers in his congregation, whose total membership is 108. The ratio of Pioneers to non-Pioneers, nationwide, is approximately 5 per cent of the total congregation.

---

## DISCUSSION

In deciding this case, it has been kept in mind that the Selective Service process is not an adversarial process. The board must reach out and give assistance to each registrant. A specific request for assistance should not be essential. This is so, in particular, where the registrant has shown a lack of familiarity with the regulations and laws governing Selective Service. Where the registrant has raised a question that would put a reasonable board member on notice of the need for clarification of his status, it is the duty of the board to enquire and to supply the needed forms and information that will aid the registrant in bringing the total facts of his case before the board.[1] See, United States v. Turner, 421 F.2d 1251 (3d Cir. 1970). In this case in virtually every piece of relevant correspondence with the board the defendant stated that he could not accept either combatant or non-combatant service. For the defendant to be exempt from the performance of non-combatant service he would have to qualify for a (IV–D) classification.[2] The standards for this classification appear in 50 App.U.S.C. § 456(g) (1967), which states in pertinent part:

"Regular or duly ordained ministers of religion, * * * and students preparing for the ministry under the direction of recognized churches or religious organizations who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been pre-enrolled, shall be exempt from

1. Forms SSSP–1398, 1399, 1400 and 1401, are used by the Board to aid in determining whether a registrant is entitled to a (IV–D) classification. Although, in their present form they would be of little assistance to a Jehovah's Witness, they do emphasize the need for assistance in presenting such a claim to the board. Form SSSP–1369 would appear to be specifically directed to ascertaining the status of persons professing to be Jehovah's Witnesses. These forms emphasize the need for detailed information to aid in determining whether a registrant would be entitled to a (IV–D) exemption.

2. (IV–D) registrants are not required to perform civilian duty in lieu of induction into the armed services. 50 App.U.S.C. § 456(g) (1967).

training and service (but not from registration) under this title."

Mrs. Alma McCarty, Executive Secretary of Local Board No. 36 in Doylestown testified that the Selective Service considers a Jehovah's Witness to be qualified for the ministerial exemption when they reach the status of a Pioneer.[3] The defendant on September 1, 1969, became a full Pioneer Minister. The only way a Jehovah's Witness can become a Pioneer Minister is by attending the Theocratic Ministry School. The board, however, never considered whether the defendant was studying full-time in a recognized theological or divinity school. This determination, in first instance, must be made by the board.

█ █ It was the duty of the board to explain and provide the needed forms and information to the defendant so that he could clearly present his (IV–D) claim. Criminal liability cannot attach where the court is not reasonably certain that the defendant was given the opportunity to present his case. Where it appears that the registrant is unfamiliar with Selective Service classification, it is the duty of the board to ensure that a vehicle is provided the registrant for explanation and development of the facts in his case. See, United States v. Pollero, 300 F.Supp. 808 (S.D.N.Y.1969).

█ Accordingly the defendant was improperly classified since he was denied procedural due process by the local board's failure to consider his (IV–D) claim and to assist the defendant in clarifying his status.

## CONCLUSIONS OF LAW

The order to report was invalid, and the defendant's failure to report was not a criminal act.

---

3. By definition, Pioneers are required to devote at least 100 hours per month to the field ministry. This does *not* include preparation or bible study activities. See, United States v. Tettenburn, 186 F.Supp. 203 (D.Md.1960).