**UNITED STATES of America**

v.

**David Thomas KLINE.**

**Crim. No. 14870.**

United States District Court,
M. D. Pennsylvania.

Nov. 24, 1972.

**934**

---

S. John Cottone, U. S. Atty., James Walker, Asst. U. S. Atty., Scranton, Pa., for the Government.

Sanford Kahn, Philadelphia, Pa., for defendant.

SHERIDAN, Chief Judge.

On May 18, 1970, David Thomas Kline was issued a duly authorized order to report for induction into the Armed Forces of the United States on June 12, 1970. He had been classified IA in May 1967. Subsequent to the issuance of the induction order, and pursuant to defendant's written request, the induction date was postponed until July 15, 1970. At the appointed time and place, Kline reported for induction but refused to take the symbolic step forward. The instant indictment, for having failed to submit to induction in violation of 50 U.S.C. App. § 462, followed. Defendant has waived trial by jury.

It is defendant's contention that he has been denied due process of law in various respects. The material facts are not in dispute and will be elaborated in the context of the legal arguments presented.

Kline's first argument is that he was subjected to an invidious discrimination[1] by an Executive Order abolishing the paternity deferment for any registrant not already possessing it who failed to notify the local board of information establishing eligibility therefor prior to April 24, 1970.[2] Defendant's child was conceived prior to that date, but he did not learn of his wife's pregnancy until May 1970. Under these circumstances, Kline's failure to qualify is alleged to arbitrarily favor those registrants who possessed the required information in time to assert their claims. However, this contention ignores the fact that, for purposes of qualifying for the fatherhood exemption, possession and transmission of the required information has been made the salient differentiating characteristic. The Selective Service System has the power to make and to enforce reasonable timeliness regulations,[3] and this must perforce encompass the ability to prescribe time limitations regarding the submission of information relevant to a claimed exemption. Equal protection merely requires that a classification have a fair and substantial relationship to a legitimate official objective, so that all persons similarly situated shall be treated alike. Eisenstadt v. Baird, 1972, 405 U.S. 438, 446–447, 92 S.Ct. 1029, 31 L.Ed.2d 349; Reed v. Reed, 1971, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225. Though the test has been variously stated, the ultimate criterion is whether

---

1. The Fifth Amendment does not contain an equal protection clause similar to that which applies to state action by the terms of the Fourteenth Amendment. However, the concepts of equal protection and due process are not mutually exclusive, and discrimination by federal officials may be so unjustifiable as to constitute a violation of Fifth Amendment due process. Bolling v. Sharpe, 1954, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884.

2. Exec.Order No. 11527, 3 C.F.R. 230 (1971).

3. Ehlert v. United States, 1971, 402 U.S. 99, 102, 91 S.Ct. 1319, 28 L.Ed.2d 625.

the line drawn is a rational one;[4] and a classification is arbitrary only if it is without any reasonable basis. Shapiro v. Thompson, 1969, 394 U.S. 618, 638 n. 20, 89 S.Ct. 1322, 22 L.Ed.2d 600. The defendant has failed to establish, and the court fails to perceive, that the abolition of the paternity deferment discriminates invidiously. Kline's argument implicitly assumes that any enactment which creates or terminates rights must arbitrarily affect those who suffer by exclusion. However, equal protection does not prevent an enactment from having a beginning or an end, and thereby distinguishing between rights of an earlier or a later time. Russo v. Shapiro, D.Conn.1969, 309 F.Supp. 385, 391.

Next, defendant claims to have been denied due process when the local board neglected to inform him of the existence of an exemption based upon extreme hardship[5] and when the board failed to reopen his classification to consider his right to a hardship deferment on the merits. These arguments will be discussed seriatim.

█ On May 18, 1970, Kline personally informed a secretary at his local board that he was married. He also indicated that his wife was pregnant and inquired whether he could qualify for a paternity deferment. The secretary accurately replied that the law had recently been changed and that he could no longer qualify for an exemption based upon impending fatherhood.[6] Defendant's induction order was mailed to him the same day. He now contends that this conversation affirmatively misled him to conclude that the deferment based upon extreme hardship had also been abolished. Alternatively, Kline argues that the board failed in its affirmative duty to apprise him of the existence of the hardship deferment.

█ To show conduct by the local board which is sufficiently misleading to constitute a defense to a criminal prosecution for refusing induction, Kline must establish that the board conveyed false information to him, that he was in fact misled by it, and that it was reasonable for him to rely on the information without being required to make further inquiries of the board. United States v. Timmins, 9 Cir. 1972, 464 F.2d 385. He has not done so. The information given him by the secretary was not misleading: he was correctly informed that he could no longer qualify for a paternity deferment. Assuming the information had been false, he could not have been misled by it unless he had prior knowledge of the existence of the hardship deferment; Kline testified at trial that he had no such knowledge. In addition, it is arguable that any reliance upon the secretary's unverified assertion would have been unreasonable without an attempt to obtain clarification from the board.

█ Similarly, there was no denial of due process when the secretary with whom Kline spoke on May 18, 1970, did not tell him of the existence of the hardship deferment after being apprised of Kline's marriage and of his wife's pregnancy. It is of course true that registrants are not to be treated as if engaged in formal litigation assisted by counsel. United States ex rel. Berman v. Craig, 3 Cir. 1953, 207 F.2d 888. When a registrant indicates, no matter how unclearly, a desire for a procedural right, it is the duty of the local board to construe the request in his favor and to obtain necessary clarification from him. United States v. Thompson, 3 Cir. 1970, 431 F.2d 1265; United States v. Turner, 3 Cir. 1970, 421 F.2d 1251. In ascertaining whether a request for assistance has been made, the analytical inquiry is whether the registrant has given the board reasonable notice that he is seeking clarification of his status; if so, the board has a duty to inquire to the extent

---

4. Levy v. Louisiana, 1968, 391 U.S. 68, 71, 88 S.Ct. 1509, 20 L.Ed.2d 436.

5. 32 C.F.R. 1622.30(a) (1971).

6. Exec.Order No. 11527, 3 C.F.R. 230 (1971).

necessary to procure those facts relevant thereto. United States v. Wilson, S.D. N.Y.1972, 345 F.Supp. 894; United States v. Galluppi, E.D.Pa.1972, 344 F. Supp. 1015. However, even assuming that Kline's conversation with the secretary was sufficient to impute knowledge of its substance to the local board, Kline never remotely intimated that his financial condition might be relevant to his draft status. Under these circumstances, the failure of the board to infer that he might be interested in procuring a hardship deferment and to provide him with information pertaining to it did not amount to a denial of fundamental fairness. United States v. Lathrop, 3 Cir. 1972, 460 F.2d 761, 763.

After Kline received his notice to report for induction, he wrote a letter to the local board in which he referred to various personal financial obligations and in which he requested that his induction be postponed one month.[7] The requested postponement was granted until July 15, 1970. He now asserts that the board erroneously refused to reopen his classification upon being presented with facts in the letter which are alleged to establish a prima facie entitlement to reopening on grounds of hardship.[8]

Initially, it must be remarked that the court does not believe that the board should even be required to construe the letter as a request to reopen defendant's classification. A registrant, untutored in the intricacies of Selective Service procedures, should not be denied procedural rights merely due to a failure to punctiliously follow the regulations; however, to hold that every submission of new facts incorporates an implicit request to reopen would impose an extraordinary administrative burden on the Selective Service System, i. e., it is essential that the registrant indicate in some way that he is dissatisfied with his classification and wishes to have it changed. United States v. Pompey, 3 Cir. 1971, 445 F.2d 1313, 1320–1321. Kline never expressed a desire to apply for a hardship deferment, and he never gave the board reason to believe that he was unaware of its existence. Instead, he merely requested that his induction be postponed one month to allow an amelioration of his personal financial condition. The requested postponement

7. In pertinent part, the letter is as follows:

"Gentlemen:

"Saturday, May 23, I received my induction notice . . . .

"Due to financial conditions, I would like to request that my induction be postponed for one month.

"At the present time I have three more $75 car payments to make and approximately $100 car insurance. I still owe the Industrial Management Institute $318.

"I am presently . . . able to work eleven hours a day; but this over-time will not last more than two months. Also, I have been with the company for over three years and am entitled to two weeks vacation pay in July, starting July 4. I have already arranged wtih my employer to work during these vacation weeks and also receive vacation pay. The amount for the work I do these two weeks should be at least $300, which would help pay my debts. My wife is 3½ months pregnant and isn't feeling to well to work right now.

"If my induction could be postponed, I am sure that with the over-time and vacation pay I could give my wife enough money to pay the rent and the doctor and buy food until I get my first pay from the Army. Also, I could lower my debts substantially.

"I would appreciate hearing from you as soon as possible so that I can make necessary arrangements with my employer. . . . "

8. Defendant does not argue, as he does with respect to his pre-induction order conversation with the board's secretary, that the receipt of the letter imposed a due process obligation upon the board to apprise him of the existence of the hardship deferment. Had such an argument been made, it would have been rejected since the court does not find the contents of the letter sufficient to put the board on notice that defendant was unaware of its existence and needed help in clarifying his status. United States v. Wilson, S.D. N.Y.1972, 345 F.Supp. 894; United States v. Galluppi, E.D.Pa.1972, 344 F. Supp. 1015.

was granted. Under these circumstances, the board was justified in assuming that Kline was seeking precisely what he asked for and received, viz., a postponement in order to smooth his transition into the Armed Forces. United States v. Lathrop, 3 Cir. 1972, 460 F. 2d 761, 764; United States v. Pompey, 3 Cir. 1971, 445 F.2d 1313, 1320–1321.

 However, assuming arguendo that defendant's letter should have been construed as a request to reopen, its substance does not establish a prima facie entitlement thereto.[9] Prior to the issuance of an induction order, if the local board is presented with new factual allegations which, if true, would warrant granting the requested classification, it is an abuse of discretion for the board to refuse to reopen unless the truth of the new allegations is conclusively refuted by other reliable information in the registrant's file; in contradistinction to these criteria, an additional condition precedent to reopening after the induction order has issued is a specific finding by the local board that the new facts constitute a change in the registrant's status due to circumstances over which he had no control. 32 C.F.R. § 1625.2 (1971), *construed in* Mulloy v. United States, 1970, 398 U.S. 410, 414 n. 2, 415–416, 90 S.Ct. 1766, 26 L.Ed.2d 362. Kline argues that his pre-existing debts in conjunction with his wife's pregnancy establish such a non-volitional change in status. This argument is rejected. *Accord*, United States v. Scialabba, 9 Cir. 1972, 465 F.2d 1395; Clark v. Volatile, 3 Cir. 1970, 427 F.2d 7. Furthermore, he has failed to address himself to the criteria necessary to make a prima facie

showing with respect to the underlying hardship exemption, and the court is not persuaded that the facts set forth in the letter demonstrate "extreme hardship" within the meaning of 32 C.F.R. § 1622.-30(a). Since there were no facts before the board which would have allowed it to reopen, defendant could not have been prejudiced by the board's failure to construe his letter as a request to do so. Therefore, there has been no denial of due process. United States v. Thompson, 3 Cir. 1970, 431 F.2d 1265, 1272; United States v. Bellmer, 3 Cir. 1968, 404 F.2d 132, 135 n. 6; United States v. Spiro, 3 Cir. 1967, 384 F.2d 159, cert. denied, 1968, 390 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151; United States v. Weaver, E.D.Pa.1972, 336 F.Supp. 558, 562.

Defendant's remaining contentions arise from the processing of his post-induction order application for an exemption based upon conscientious objection. After having received his order to report for induction, Kline requested and received Form 150, the application for conscientious objector status; he completed it and returned it to the local board. On July 14, 1970, Kline was personally interviewed by members of the local board; that same day, he submitted a letter to it in which he summarized the views upon which he based his request for reopening.[10] It is undisputed that the materials presented to the board in support of Kline's application unequivocally indicated that his beliefs had become fixed at least two years prior to his scheduled induction and had remained constant throughout the intervening period. The board denied Kline's

---

9. At trial, additional evidence was adduced regarding Kline's financial status. However, in evaluating the propriety of board action, the court's inquiry is limited to the information presented in defendant's letter. United States v. Jones, 3 Cir. 1972, 468 F.2d 454, 456 n. 5.

10. Relevant portions thereof appear as follows:

"Because of my Religious and moral views about humanity, killing, and the army, I have known for about two

years that I could not consciously serve in the Armed Forces . . .

"Because my religious views were unorthodox, and because a lot of my views were only moral, I though it was impossible to get a CO until after the recent Supreme Court decision which was after I received my induction order.

"Because of this fact I would like to ask the Board to cancel my July order to report for induction and reopen my classification to consider my CO claim."

request, stating merely that there had been no change in status due to circumstances beyond the registrant's control. He now asserts that he was denied due process both when the board refused to reopen his classification and when it failed to give a more elaborate statement of reasons in support of its refusal to reopen.

Kline's argument that the board erred in refusing to reopen is without merit. The Selective Service System's power to make reasonable timeliness rules for the presentation of claims to exemption from service includes the power to require the submission, prior to the mailing of an induction order, of a claim matured before that time. Ehlert v. United States, 1971, 402 U.S. 99, 101–102, 91 S.Ct. 1319, 28 L.Ed.2d 625; United States v. Cunningham, E.D.Pa.1972, 345 F.Supp. 37. When, as here, the beliefs of a post-induction order applicant for conscientious objector status have matured in ample time for him to have notified the local board prior to the issuance of the order, and he has merely failed to do so, there is no "change in the registrant's status resulting from circumstances over which the registrant had no control" within the meaning of 32 C.F.R. § 1625.2, and the board may not reopen the registrant's classification. United States v. Stock, 9 Cir. 1972, 460 F.2d 480; United States v. Taylor, 5 Cir. 1971, 448 F.2d 349, 353, cert. denied, 1972, 404 U.S. 1024, 92 S.Ct. 677, 30 L.Ed.2d 674; United States v. Simon, 9 Cir. 1971, 448 F.2d 1272; United States v. Angelico, 7 Cir., 427 F.2d 288, cert. denied, 1970, 400 U.S. 947, 91 S.Ct. 254, 27 L.Ed.2d 253; United States v. Sandbank, 2 Cir. 1968, 403 F.2d 38, cert. denied, 1969, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562; United States v. Kroll, 3 Cir. 1968, 400 F.2d 923, cert. denied, 1969, 393 U.S. 1069, 89 S.Ct. 728, 21 L.Ed.2d 713; United States v. Gearey, 2 Cir. 1966, 368 F.2d 144, 149;

United States v. Cunningham, E.D.Pa. 1972, 345 F.Supp. 37; United States v. Donaldson, E.D.Pa.1972, 336 F.Supp. 1086; United States v. Watson, E.D. Mo.1970, 314 F.Supp. 483, 492, aff'd, 8 Cir., 442 F.2d 1273, cert. denied, 1971, 404 U.S. 848, 92 S.Ct. 152, 30 L.Ed.2d 85. Furthermore, under these circumstances lack of in-service review of Kline's conscientious objector claim would not deny him due process. AR 635–20, *construed in* Grubb v. Birdsong, 6 Cir. 1971, 452 F.2d 516, 519 n. 1; Morrison v. Larsen, 9 Cir. 1971, 446 F. 2d 250; United States v. Donaldson, E. D.Pa.1972, 336 F.Supp. 1086.

It is asserted that defendant's failure to submit a timely pre-induction order application was reasonable because he was subjectively unaware that he would qualify as a conscientious objector pursuant to the prevailing legal standard.[11] Upon reading a newspaper account of the decision in Welsh v. United States,[12] Kline realized that he might qualify and thereafter applied for the exemption. However, this argument is insufficient to justify a registrant's failure to seek an administrative determination of his status. United States v. Keys, 6 Cir. 1972, 465 F.2d 736, 739 n. 3; United States v. Gerin, 9 Cir. 1972, 464 F.2d 492; United States v. Kirschke, E.D.Pa.1972, 339 F.Supp. 834; United States v. Townsend, E.D.Pa.1971, 335 F.Supp. 425. Since Kline concluded, subjectively and unilaterally, that he was not entitled to the exemption, there is no denial of due process from the board's refusal to consider his post-induction order application on the merits. United States v. Lloyd, 9 Cir. 1972, 460 F.2d 1052; United States v. Taylor, 5 Cir. 1971, 448 F.2d 349, cert. denied, 1972, 404 U.S. 1024, 92 S.Ct. 677, 30 L. Ed.2d 674; United States v. Walker, 1 Cir. 1970, 424 F.2d 1069, cert. denied, 1971, 402 U.S. 985, 91 S.Ct. 1673, 29 L. Ed.2d 151; United States v. Powers, 1 Cir., 413 F.2d 834, cert. denied, 1969,

11. United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733.

12. 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308.

396 U.S. 923, 90 S.Ct. 256, 24 L.Ed.2d 205; United States v. Bender, D.Minn. 1972, 336 F.Supp. 763. Therefore, administrative remedies have not been exhausted, and defendant cannot now assert an improper denial of conscientious objector status as a defense to criminal prosecution. McGee v. United States, 1971, 402 U.S. 479, 91 S.Ct. 1565, 29 L. Ed.2d 47; United States v. El, 3 Cir., 443 F.2d 925, cert. denied, 1971, 404 U. S. 913, 92 S.Ct. 239, 30 L.Ed.2d 187; United States v. Kirschke, E.D.Pa.1972, 339 F.Supp. 834; United States v. Townsend, E.D.Pa.1971, 335 F.Supp. 425.

With respect to defendant's final argument, viz., that he was denied due process when the board did not elaborate its reasons for refusing to reopen his classification, heavy reliance is placed upon the decision in Scott v. Commanding Officer,[13] in which it was held that a local board's inadequate statement of reasons for refusing a post-induction order request to reopen upon being presented with a prima facie showing of conscientious objection based upon alleged late crystallization yields a denial of due process which invalidates a subsequent induction order. The court reasoned that once a prima facie case is made, the reviewing authority would risk blind endorsement of an unwarranted factual inference or of the application of an erroneous legal standard unless apprised of the basis for the board's decision;[14] pursuant to this rationale,

reasons must also be given to facilitate adequate review within the administrative process. United States ex rel. Bent v. Laird, 3 Cir. 1971, 453 F.2d 625, 632 n. 2; United States v. Neamand, 3 Cir. 1971, 452 F.2d 25; United States v. Stephens, 3 Cir. 1971, 445 F.2d 192, 197 (Concurring Opinion); United States v. Speicher, 3 Cir. 1971, 439 F.2d 104, 108. However, the court does not feel that Scott and its progeny [15] are apposite under the circumstances of this case.

As a condition precedent to the board's due process obligation to articulate its reasons for refusing to reopen, the registrant must establish a prima facie entitlement thereto. Cale v. Volatile, 3 Cir. 1972, 465 F.2d 1110, 1112–1113. Once an induction order has issued, this requires not only that the registrant present new allegations demonstrating a presumptive right to the underlying exemption, but also that the new allegations amount to a change in status resulting from circumstances over which the registrant had no control.[16] 32 C.F.R. § 1625.2. In support of his request to reopen, Kline unambiguously informed the board that the beliefs upon which he based his claim had remained constant for approximately two years prior to his scheduled induction. Since he failed to establish a prima facie change of status and since the local board was therefore powerless to reopen under the clear mandate of 32 C.F.R. § 1625.2, no statement of reasons need be

---

13. 3 Cir. 1970, 431 F.2d 1132.

14. *Id.* at 1137–1138.

15. See, e. g., United States v. Jones, 3 Cir. 1972, 468 F.2d 454; Cale v. Volatile, 3 Cir. 1972, 465 F.2d 1110; United States v. Ziskowski, 3 Cir. 1972, 465 F.2d 480; United States v. Shomock, 3 Cir. 1972, 462 F.2d 338; United States ex rel. Bent v. Laird, 3 Cir. 1971, 453 F.2d 625; United States v. Neamand, 3 Cir. 1971, 452 F.2d 25; United States v. Stephens, 3 Cir. 1971, 445 F.2d 192; United States v. Crownfield, 3 Cir. 1971, 439 F.2d 839; United States v. Speicher, 3 Cir. 1971, 439 F.2d 104.

16. It is unclear whether a prima facie showing of a nonvolitional change in status suffices, or whether the board must make a finding on the merits. *Compare* Mulloy v. United States, 1970, 398 U.S. 410, 414 n. 2, 90 S.Ct. 1766, 26 L.Ed.2d 362 *and* Scott v. Commanding Officer, 3 Cir. 1970, 431 F.2d 1132, 1135 *with* United States v. Solomon, 5 Cir. 1971, 450 F.2d 456, *and* United States v. Stacey, 9 Cir. 1971, 441 F.2d 508. However, that issue need not be resolved since the facts submitted by Kline to the local board do not constitute even a prima facie showing of the required change in status. Clark v. Volatile, 3 Cir. 1970, 427 F.2d 7, 10.

given.[17] United States v. Solomon, 5 Cir. 1971, 450 F.2d 456; United States v. Gibboney, E.D.Va.1971, 342 F.Supp. 1185, 1186–1187.

This is not a case in which the failure to require an elaboration of reasons will prejudice the judicial review of a possibly erroneous legal or factual judgment made by the board with respect to the underlying exemption. Scott v. Commanding Officer, 3 Cir. 1970, 431 F.2d 1132, 1137–1138. Nor is it a case in which the board's decision might reasonably have rested on any of several alternative grounds,[18] some of which might militate against the full evaluation on the merits to which defendant would otherwise be entitled.[19] Instead, the board could only have decided that the undisputed facts submitted in support of Kline's application failed to establish a change of status as a matter of law. *Accord*, Clark v. Volatile, 3 Cir. 1970, 427 F.2d 7, 12. (Concurring Opinion); United States v. Ziskowski, 3 Cir. 1972, 465 F.2d 480, 484 and n. 10. Under these circumstances, whatever the local board may have done vis-a-vis the underlying exemption is simply irrelevant; its action would be ipso facto harmless,[20] and there could be no denial of due process. United States v. Thompson, 3 Cir. 1970, 431 F.2d 1265, 1272; United States v. Bellmer, 3 Cir. 1968, 404 F.2d 132, 135 n. 6; United States v. Spiro, 3

Cir. 1967, 384 F.2d 159, cert. denied, 1968, 390 U.S. 956, 88 S.Ct. 1028, 19 L. Ed.2d 1151; United States v. Weaver, E.D.Pa.1972, 336 F.Supp. 558, 562.

█ In reaching this conclusion, the court merely holds that when a local board is presented with a post-induction order request to reopen a registrant's classification on grounds of conscientious objection which indicates unambiguously that the beliefs upon which the registrant relies have remained fixed for approximately two years prior to the request, there is no denial of due process if the local board, in refusing to reopen, merely states that the registrant has failed to establish a change in status due to circumstances over which he had no control. As stated by Judge Hoffman in United States v. Gibboney: [21]

". . . Since Gibboney's initial claim as a conscientious objector was received after the issuance of two orders to report for induction, and after the actual receipt of at least one of said orders, it was not incumbent upon the Local Board to state its reasons for the denial of a post-induction notice conscientious objector claim. . . . It would be an idle gesture to require draft boards to analyze and state the reasons for any denial of a request to reopen, when all that need be done is to say to the registrant: 'You are too late.' "

17. Ironically, Scott himself may have failed to present a prima facie case for reopening. United States v. Neamand, 3 Cir. 1971, 452 F.2d 25, 26 n. 1. In recent decisions, the Third Circuit has continued to apply the *Scott* rationale to post-induction order applicants who alleged late crystallization, but with an emerging recognition of the importance of the uncertainty of in-service review. *See* United States v. Ziskowski, 3 Cir. 1972, 465 F. 2d 480; United States v. Shomock, 3 Cir. 1972, 462 F.2d 338. This is clearly consistent with the concern that alleged late crystallizers have a full evaluation of the merits of their claims prior to assignment to combatant training and service. Ehlert v. United States, 1971, 402 U.S. 99, 102–104, 91 S.Ct. 1319, 28 L.Ed.2d 625. However, no such concern exists with

respect to a registrant whose beliefs crystallized in ample time to submit a pre-induction order application but who merely neglected to do so. *Id.* at 101–102, 91 S.Ct. 1319; Grubb v. Birdsong, 6 Cir. 1971, 452 F.2d 516, 519 n. 1; Morrison v. Larsen, 9 Cir. 1971, 446 F.2d 250; United States v. Donaldson, E.D.Pa.1972, 336 F.Supp. 1086.

18. Paszel v. Laird, 2 Cir. 1970, 426 F.2d 1169, 1174.

19. See discussion and cases cited note 17, supra.

20. United States v. Stacey, 9 Cir. 1971, 441 F.2d 508, 511.

21. E.D.Va.1971, 342 F.Supp. 1185, 1186–1187.

At the time of defendant's induction, his classification of IA had a basis in fact. He has not been denied due process of law. Therefore, his refusal to submit to induction makes him guilty of the offense charged.